IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW MEXICO

| | |
|---|---|
| In the Matter of the Search of | Case No. _____ |
| THE PERSON OF JOHN EASTMAN | |

**MOTION FOR RETURN OF PROPERTY UNDER FED. R. CRIM. P. 41(g)**

John C. Eastman (hereinafter movant), through undersigned counsel, respectfully asks this Court to order the return of property seized during the execution of a warrant on movant's person. In support of this motion, movant asserts the following:

### BACKGROUND

On the evening of June 22, 2022, federal agents served a search warrant (Exhibit 1) on movant while movant was exiting a restaurant. Movant asked to see the warrant, but the executing officer refused. Movant was frisked. Movant's phone—an iPhone Pro 12—was seized. Movant was forced to provide biometric data to open said phone. Movant was not provided a copy of the warrant until after his phone was seized, and even then, he was only given a copy of the search warrant but not the supporting affidavit referenced in it.

The federal agents identified themselves as FBI agents, but they appeared to be executing a warrant issued at the behest of the Department of Justice's Office of the Inspector General (OIG). *See* Ex. 1 (noting that after seizure, the phone is to be transported "to Washington, D.C., or to the DOJ-OIG forensic laboratory in Northern Virginia").

While movant is an attorney, movant has never worked for the Department of Justice.

The warrant authorized a search of movant's person and the area within movant's immediate control. Ex. 1 at 2. The warrant authorized seizure of "any electronic or digital device—including cell phones, USB devices, iPads, and computers identified in the affidavit—and all information in such devices." Ex. 1 at 3.

The warrant authorized:

> [T]he compelled display of any physical biometric characteristics (such as fingerprint/thumbprint, facial characteristics, or iris display) necessary to unlock any device(s) requiring such biometric access subject to seizure pursuant to this warrant for which law enforcement has reasonable suspicion that the aforementioned person(s)' physical biometric characteristics will unlock the device(s), to include pressing fingers or thumbs against and/or putting a face before the sensor, or any other security feature requiring biometric recognition of any of the devices, for the purpose of attempting to unlock the device(s )'s security features in order to search the contents as authorized by this warrant.

Ex. 1 at 3.

## ARGUMENT

"A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). This warrant is unlawful for at least three reasons. *First*, OIG has outstripped it mandate by targeting a person outside of the Department of Justice. *Second*, the warrant does not describe with particularity the items to be seized, is overbroad, and provides no probable cause link to any suspected criminal activity, all in violation of the requirements of the Fourth Amendment. *Third*, the warrant authorized and resulted in a violation of Movant's Fifth Amendment rights, as well as rights secured by the First Amendment, privileges that protect the right to counsel contained in the Sixth Amendment, and fundamental privacy interests.

### I. OIG HAS NO JURISDICTION OVER MOVANT.

The OIG is authorized to, *inter alia*, "initiate, conduct and supervise such audits and investigations *in the Department of Justice*," and "investigate allegations of criminal wrongdoing

2

or administrative misconduct by a person who is the head of *any agency or component of the Department of Justice*[.]" 5 U.S.C. APP. 3 § 8E(b)(1), (b)(4). An inspector general is necessarily an internal looking organization. Its mandate extends to allegations of wrongdoing within the Department of Justice.

Movant is not now, nor has Movant ever been, an employee or officer of the Department of Justice. Movant has no contractual obligations with the Department of Justice. Movant is, therefore, outside of the OIG's jurisdiction.

II. **THE WARRANT WAS FACIALLY INVALID UNDER THE FOURTH AMENDMENT.**

The warrant broadly authorized seizure of any of movant's electronic devices "identified in the affidavit—and all information in such devices." Ex. 1. The warrant is facially unconstitutional under the Fourth Amendment for at least three reasons. First, because the referenced affidavit was not attached to the warrant, the warrant itself does not identify with the requisite particularity which devices are to be seized. Second, the warrant's authorization for "all information in such devices" is unconstitutionally overbroad. Third, the warrant does not even mention, much less describe with specificity, any particular crime for which evidence sought by the warrant might be relevant, or include any information linking movant's devices or the information contained therein to any such crime, or even that said devices were likely to exist or be on movant's person.

    **A. The Warrant Does Not Describe the Items to be Seized with the Particularity Required by the Fourth Amendment.**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, *and particularly describing the place to be searched, and the persons or things to be seized.*" U.S. Const. amend. IV (emphasis added). The warrant itself does not provide a list of items to be seized. Rather, it authorizes seizure of electronic devices

"identified in the affidavit," but the affidavit was not attached.  In order to be incorporated by reference, "[a]n affidavit must be physically attached to the warrant, and the search warrant must expressly refer to the affidavit and incorporate it into the search warrant with suitable words of reference. *United States v. Sterling*, No. CR 03-2566 JB, 2006 WL 8444153, at *9 (D.N.M. May 8, 2006) (emphasis added) (citing *United States v. Leary*, 846 F.2d 592, 603 (10th Cir. 1988)); *see also United States v. Brakeman*, 475 F.3d 1206, 1209 (10th Cir. 2006) ("affidavit for [a] warrant can be considered in assessing [the] particularity of [the] warrant when incorporated by reference and attached to [the] warrant."). Because the warrant itself fails to "particularly describ[e]" the things to be seized, it is unconstitutional on its face.

Moreover, without the particularity described in the affidavit or other information relied upon by the magistrate judge, the warrant improperly limits movant's ability to demonstrate his aggrieved position as to the unlawful search and seizure of his property.  See Fed. R. Crim. P. 41(d).  By failing to provide the affidavit or other information, it shows an intent by the Government to prevent movant from developing his challenges to the warrant as an aggrieved party.  Fed. R. Crim. P. 41(g).  This omission prejudices movant's ability to demonstrate the irreparable harm, particularly where there is no pending matter to formally file a challenge to the search warrant.  *See United States v Shigemura*, 664 F.3d 310, 312 (10th Cir. 2011) ("A district court should exercise its equitable power to grant relief only if the Rule 41(g) movant shows 'irreparable harm and an inadequate remedy at law'.") (quotations and citations omitted).

### B. The Warrant's Authorization for seizure of "all information in such devices" is unconstitutionally overbroad.

Courts have long held that a warrant with an "indiscriminate sweep" is "constitutionally intolerable." *Stanford v. Texas*, 379 U.S. 476, 486 (1965); *see also Coolidge*, 403 U.S. at 467 (Stewart, J., plurality) (explaining the "specific evil" of an overbroad warrant is "a general,

4

exploratory rummaging in a person's belongings"); *United States v. Griffith*, 867 F.3d 1265, 1275 (D.C. Cir. 2017); *United States v. Guarino*, 729 F.2d 864, 866 (1st Cir. 1984). "[S]earches deemed necessary should [therefore] be as limited as possible." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) (Stewart, J., plurality).

The warrant's authorization to seize "all information in such devices," quite apart from the failure to specify which devices, does not provide *any* limit, much less provide a particularized description, of what information can be seized. Instead, it operates as a general warrant, allowing for an unconstitutional "exploratory rummaging" through movant's electronic data. *See United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988) ("This [particularity] requirement prevents a general exploratory rummaging in a person's belongings....")). As this Court has previously recognized, "General warrants are at the heart of the Fourth Amendment's prohibition. Those searches that are "deemed necessary should be as limited as possible. Here the specific evil is the 'general warrant' abhorred by the colonists...." *United States v. Sterling*, No. CR 03-2566 JB, 2006 WL 8444153, at *5 (D.N.M. May 8, 2006) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) and citing *United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988) ("This [particularity] requirement prevents a general exploratory rummaging in a person's belongings....")).

The D.C. Circuit provides instructive insight. *Griffith*, 867 F.3d 1265. There, police searched the shared apartment of a murder suspect for, among other things, any cell phones. *Id*. at 1268–69. *Griffith* found that warrant overbroad because it lacked evidence a cell phone existed, *id*. at 1270–71, evidence a phone would be located at the apartment, *id*. at 1273, evidence the cell phone was related to the murder, *id*., and the warrant's "expansive sweep," reaching the

5

defendant's girlfriend and anyone else present in the house, "far outstripped the police's proffered justification for entering the home—viz., to recover any devices owned by [the defendant]," *id.*[1]

### C. The warrant does not even mention, much less describe with specificity, any particular crime for which evidence sought by the warrant might be relevant, or include any information linking movant's devices or the information contained therein to any such crime, or even that said devices were likely to exist or be on movant's person.

The Fourth Amendment also requires a finding of probable cause that a search will yield evidence related to a specific crime. "The particularity requirement [described in subsection A above] also ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Sterling,* 2006 WL 8444153, at *5 (quoting *Leary*, 846 F.2d at 600, in turn quoting *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985)). The warrant mentions no crime at all, much less any specific crime, and even if the specifics necessary to support a finding of probable cause related to a specific crime are contained in the supporting affidavit, the affidavit was not attached to the warrant and therefore cannot serve to cure the warrant's facial defect on this score. As the Supreme Court has held, "[t]he fact that the application adequately described the 'things to be seized' does not save the warrant from its facial invalidity," because "[t]he Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Sterling*, 2006 WL 8444153, at *6 (quoting *Groh v. Ramirez*, 540 U.S. 551, 557 (2004).

---

[1] In the context of electronic data such as is at issue here, one Ninth Circuit judge has proposed that "where the privacy interests of numerous other parties who are not under suspicion of criminal wrongdoing are implicated by the search," magistrates should take special measures to protect this information. *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1179 (9th Cir. 2010) (Kozinski, C.J., concurring); *see also United States v. Schesso*, 730 F.3d 1040, 1049 (9th Cir. 2013) (finding it important that third party rights were not implicated in a broad warrant).

6

Moreover, the warrant provides no allegation that Movant owned, possessed, or had control over *any* electronic devices. True, many people now own cellular phones. But this warrant provides "no indication otherwise of [movant's] ownership of a cell phone at any time. *Griffith*, 867 F.3d at 1272. Nor does the warrant establish probable cause that Movant owns any other electronic devices that "do not approach cellphones in their ubiquity[.]" *Id.*

This issue is compounded by the fact that the warrant gives no indication that evidence of any wrongdoing would be found on a cell phone or other electronic device. "Because a cell phone, unlike drugs or other contraband, is not inherently illegal, there must be reason to believe that a phone may contain evidence of the crime." *Id.* at 1274. The burden for seizure is therefore higher, and this warrant does not remotely meet it.

### III. THE EXECUTIVE OFFICER'S REFUSAL TO PROVIDE MOVANT WITH THE WARRANT "AT THE OUTSET" WAS UNREASONABLE AND THEREFORE A SEPARATE FOURTH AMENDMENT VIOLATION.

Despite movant's explicit request to see a copy of the warrant before surrendering his cell phone, the lead FBI agent refused to provide Dr. Eastman with a copy of the warrant "at the outset." Exhibit 2, Eastman Decl. ¶¶ 4-6. Although the Supreme Court once noted in passing in a footnote "that neither the Fourth Amendment nor Rule 41 … requires the executing officer to serve the warrant on the owner before commencing the search"—a statement of pure *dicta* that this Court in an unpublished opinion has erroneously described as a holding, *see United States v. Elliott*, No. CR 14-3822 RB, 2015 WL 13667417, at *5 (D.N.M. Oct. 21, 2015)—the Supreme Court also suggested in that same footnote that it might be "unreasonable to refuse a request to furnish the warrant at the outset of the search when, as in this case, an occupant of the premises is present and poses no threat to the officers' safe and effective performance of their mission…."—an issue which

7

was not presented by the case. *Groh v. Ramirez*, 540 U.S. 551, 562 n.5 (2004).[2] Both before and after the *Groh* decision, the Ninth Circuit has repeatedly held that, "[a]bsent exigent circumstances, Rule 41(d) requires service of the warrant *at the outset* of the search on persons present at the search of their premises." *United States v. Williamson*, 439 F.3d 1125, 1132 (9th Cir. 2006) (emphasis added, quoting *United States v. Gantt*, 194 F.3d 987, 1000 (9th Cir.1999), and citing *United States v. Smith*, 424 F.3d 992, 1006-07 (9th Cir.2005)).

The reasoning of the Ninth Circuit's decisions is persuasive, and ought to be followed by this Court. "The Supreme Court has repeatedly held," it has noted, "that an essential function of the warrant is to 'assure[] the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.'" *Williamson*, 439 F.3d at 1132 (quoting *Gantt*, 194 F.3d at 1001, in turn quoting *United States v. Chadwick*, 433 U.S. 1, 9 (1977), *abrogated on other grounds*, *California v. Acevedo*, 500 U.S. 565 (1991)). That "essential function" cannot be fulfilled if the warrant is not provided "at the outset."

Indeed, that reasoning has already been utilized by this Court and by the Tenth Circuit in addressing the need for particularity in the warrant. "The Fourth Amendment requires particularity in the warrant, not in the supporting documents. This is so that the description of what is sought to be seized is written in, or incorporated into, the warrant to ensure that the executing officer(s) stay within the specific bounds set by the issuer." *United States v. Chavez*, No. 1:21-CR-00294-JCH-1, 2022 WL 252355, at *14 (D.N.M. Jan. 27, 2022) (quoting or citing *United States v.*

---

[2] The Supreme Court itself subsequently reiterated that the text of the Fourth Amendment does not require in all cases that a warrant be provided before a search is conducted, but it did not in the case address the suggestion in *Groh* that refusal to do so might be "unreasonable" in particular circumstances such as those recognized in the several Ninth Circuit opinions discussed above. *United States v. Grubbs*, 547 U.S. 90, 99 (2006) (citing *Groh*).

8

*Cooper*, 654 F.3d 1104, 1126 (10th Cir. 2011); *Groh v. Ramirez*, 540 U.S. 551, 557 (2004); and *United States v. Suggs*, 998 F.3d 1125, 1136 (10th Cir. 2021) (internal quotations omitted)).

There are no exigent circumstances here that would have precluded the executing officer from providing movant with a copy of the warrant "at the outset"—before his phone had been seized. And had that been done, movant would have been able to call the officer's attention to the several constitutional infirmities evident on the face of the warrant, thus preventing the unconstitutional seizure in the first place.

IV. **THE SEARCH AND SEIZURE AUTHORIZED BY THE WARRANT ALSO VIOLATES THE FIRST AND FIFTH AMENDMENTS AND PRIVILEGES THAT FURTHER THE RIGHT TO COUNSEL PROTECTED BY THE SIXTH AMENDMENT.COMPELLED TESTIMONY IN VIOLATION OF MOVANT'S FIFTH AMENDMENT RIGHT AGAINST SELF INCRIMINATION.**

   **A. The Warrant's Authorization to Compel Movant to Provide Access to a Cell Phone with Personal Biometric Information Violates the Fifth Amendment.**

Under *United States v. Hubbell*, the target of a request for action holds a Fifth Amendment right against self-incrimination where the action is itself a "statement of fact." 530 U.S. 27, 36 (2000) ("By producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic." (internal quotation marks omitted)).

In the context of biometrics, compelled use of facial recognition is testimonial because it reveals (a) that the subject has unlocked the phone previously and (b) that the subject exercises some degree of control over the phone. *United States v. Wright*, 431 F. Supp. 3d 1175, 1187 (D. Nev. 2020), *aff'd on other grounds*, No. 20-10303, 2022 WL 67341 (9th Cir. Jan. 6, 2022); *see also Matter of Residence in Oakland, California*, 354 F. Supp. 3d 1010, 1016 (N.D. Cal. 2019); *cf. In re Application for a Search Warrant*, 236 F. Supp. 3d 1066, 1073 (N.D. Ill. 2017) ("By using a finger to unlock a phone's contents, a suspect is *producing* the contents on the phone. With a

9

touch of a finger, a suspect is testifying that he or she has accessed the phone before, at a minimum, to set up the fingerprint password capabilities, and that he or she currently has some level of control over or relatively significant connection to the phone and its contents.").[3]

When federal agents forced movant to unlock the seized phone with biometric data, the government forced movant to testify that (1) Movant recently used the phone; (2) movant had some control over the contents of the phone; and (3) that Movant's control over the phone approached exclusivity.[4] Although the courts in this circuit do not appear to have yet confronted this issue, the decisions by district courts elsewhere holding that the compelled use of biometric information violates the Fifth Amendment are persuasive, and should be followed.

> **B. The Warrant Authorizes Seizure of Information that is Protected by the First Amendment, by Attorney-Client and Work-Product Privileges that Further the Right to Counsel Protected by the Sixth Amendment, and by Privacy Rights.**

The warrant's authorization to seize "all information in" specified electronic devises is not only overbroad in violation of the Fourth Amendment, but also specifically covers information that another federal court has already held to be protected by the First Amendment and by Attorney-Client and Work-Product Privileges that further the right to counsel protected by the Sixth Amendment. It also amounts to an unconstitutional intrusion on movant's right to privacy.

---

[3] A couple of district courts have held otherwise. While recognizing that "[t]he law in this area is emerging and entirely unsettled," for example, the District Court for the Eastern District of Kentucky held that "the government may compel an individual's biometrics if there exists reasonable suspicion to believe that the individual has committed a criminal act for which the warrant authorizes an evidentiary search, *and* that the individual's biometric features will unlock the device." *In re Search Warrant No. 5165*, 470 F. Supp. 3d 715, 724 (E.D. Ky. 2020); *see also Matter of Search of [Redacted] Washington, D.C.*, 317 F. Supp. 3d 523, 533 (D.D.C. 2018) (same). In our view, the cases cited above are more consistent with the important protections provided by the Fourth Amendment.

[4] The model of phone in question only allows two faces to unlock a phone. *See* Martyn Casserly, "How to add a second face to Face ID," *MacWorld* (Apr. 7, 2021), available at https://www.macworld.com/article/676641/how-to-add-a-second-face-to-face-id.html.

Movant specifically does not waive any Attorney-Client and Work-Product Privileges. The search and seizure of the phone jeopardizes the improper disclosure of privileged information. The United States Supreme Court states that "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Confidentiality will be "lost if the client discloses the substance of an otherwise privileged communication to a third party." *In re Qwest Commc'n Int'l. Inc.*, 450 F.3d 1179, 1185 (10th Cir.2006). "The confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived." *Id*. Where disclosure to a third party is voluntary, the privilege is waived. *Id*. The Courts must further apply the same waiver analysis to the privilege to involuntary disclosures. *United States v. Ary*, 518 F.3d 775, 783 (10th Cir. 2008).

The cell phone that was seized contains access to movant's email accounts, including emails that have been the subject of an intense, five-month privilege dispute between movant and the U.S. House of Representatives Select Committee to Investigate the January 6th Attack on the U.S. Capitol. Eastman Decl. ¶ 7; *see also Eastman v. Thompson*, No. 8:22-cv-00099-DOC-DFM (C.D. Cal. 2022). That litigation has received extensive media attention, so it is hard to imagine that the Department of Justice, which apparently submitted the application for the warrant at issue here, was not aware of it.

The district court for the Central District of California expressly determined that a number of movant's emails—emails which are accessible through movant's cell phone—are protected by the First Amendment's freedom of association, by attorney-client privilege, and/or by the work product doctrine.

With respect to the First Amendment, the California district court recognized that disclosing information related to political associations can "have a profound chilling effect on the exercise of political rights." *Id.*, Dkt. #356 at 22 (quoting *Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir. 2010) (citing *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539, 557 (1963)). It further recognized that the Supreme Court has therefore held that disclosure is only appropriate when there is "a sufficiently important governmental interest." *Id.* (quoting *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2383 (2021) (plurality opinion) (quoting *Doe v. Reed*, 561 U.S. 186, 196 (2010) (internal quotation marks omitted)). It accordingly held that some of movant's emails "are protected from disclosure." *Id.*

The California district court also found that hundreds of movant's emails—also accessible by the seized phone—are protected by attorney-client privilege and/or the work product doctrine. *Id.* at 26 ("the Court finds that 440 [of the disputed 559] documents are privileged").

In addition, by its very breadth, the warrant intrudes on significant privacy interests, both of movant and of others whose communications with him are accessible on the seized cell phone.

## CONCLUSION

For the foregoing reasons Movant respectfully requests that this court order OIG to return Movant's property—both the cell phone and "all information" in it, as well as to destroy all copies of any information that has already been retrieved or copied from the device. Movant further requests that any access to the cell phone and its information be stayed until he has a full and fair opportunity to assert and protect his Constitutional rights and the privileged communications of his numerous clients.

13

Respectfully Submitted,

/s/ Charles Burnham_____
Charles Burnham
Attorney for Movant
Burnham & Gorokhov, PLLC
1424 K Street NW, Suite 500
Washington, DC 20005
(202) 386-6920 (phone)
(202) 765-2173 (fax)
charles@burnhamgorokhov.com


/s/ Joseph J. Gribble_____
Joseph J. Gribble
Local Counsel
Crowley & Gribble, P.C.
300 Central Ave SW, Suite 3500
Albuquerque, NM 87102
(505) 314-1450
(505) 314-1452 (fax)
jjg@crowleygribble.com