# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO
Albuquerque Division

|  |  |  |
|---|---|---|
| **JOHN EASTMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:22-mc-00023-RB** |
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant,** | ) | |

## AMENDED MOTION FOR RETURN OF SEIZED PROPERTY UNDER FED. R. CRIM. P. 41(g) AND REQUEST FOR INJUNCTIVE AND OTHER RELIEF

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. 4

AMENDED MOTION FOR RETURN OF SEIZED PROPERTY under Fed. R. Crim. P. 41(g) AND REQUEST FOR INJUNCTIVE AND OTHER RELIEF ..................................................... 8

BACKGROUND .............................................................................................. 8

ARGUMENT ................................................................................................. 9

I.   UNDER RULE 41, THE SEIZED PROPERTY SHOULD BE RETURNED TO MOVANT ................................................................................................. 9

   A. OIG Has No Jurisdiction Over Movant. ........................................................... 9

   B. The Warrant was Facially Invalid Under the Fourth Amendment. ............................. 10

      1.   The warrant does not describe the items to be seized with the particularity required by the Fourth Amendment ................................................................. 10

      2.   The warrant's authorization for seizure of "all information in such devices" is unconstitutionally overbroad. .................................................................. 11

      3.   The warrant does not even mention, much less describe with specificity, any particular crime for which evidence sought by the warrant might be relevant or include any information linking movant's devices or the information contained therein to any such crime, or even that said devices were likely to exist or be on movant's person. ............................................................................. 14

   C. The Executing Agent's Refusal to Provide Movant With the Warrant "At The Outset" Was Unreasonable and Therefore a Separate Fourth Amendment Violation. ............... 15

   D. The Search And Seizure Authorized By The Warrant Also Violates The First And Fifth Amendments And Privileges That Further The Right To Counsel Protected By The Sixth Amendment. .......................................................................... 17

      1.   The warrant's authorization to compel Movant to provide access to a cell phone with personal biometric information violates the Fifth Amendment. ...................... 17

      2.   The warrant authorizes seizure of information that is protected by the First Amendment, by attorney-client and work-product privileges that further the right to counsel protected by the Sixth Amendment, and by privacy rights. ...................... 18

   E. The Above Violations Constitute Irreparable Injury For Which Movant Has No Redress. ................................................................................... 20

      1.   Irreparable Harm ................................................................... 21

      2.   Movant Has No Adequate Remedy At Law ...................................... 22

II.  IN THE ALTERNATIVE THIS COURT SHOULD ENJOIN THE GOVERNMENT
FROM SEEKING AND/OR EXECUTING A WARRANT FOR THE CONTENT OF THE
SEIZED PHONE. ................................................................................................. 23

  A.  Likelihood of Success on the Merits ............................................................... 24

    1.  Constitutional Claims .................................................................................. 24

    2.  Attorney-Client Privilege ............................................................................ 24

  B.  Irreparable Injury ............................................................................................ 26

    1.  Constitutional Claims .................................................................................. 26

    2.  Attorney-Client Privilege ............................................................................ 27

  C.  Threatened Injury Outweighs the Injury to Opposing Party ........................... 27

  D.  Public Interest ................................................................................................. 28

III. THIS COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER TO
PRESERVE THE STATUS QUO WHILE THESE ISSUES ARE PROPERLY
LITIGATED. ..................................................................................................... 28

CONCLUSION ........................................................................................................ 29

# TABLE OF AUTHORITIES

**Cases**

*Americans for Prosperity Found. v. Bonta*,
141 S. Ct. 2373 (2021) ...................................................................... 20

*California v. Acevedo*,
500 U.S. 565 (1991) ........................................................................ 16

*Coolidge v. New Hampshire*,
403 U.S. 443 (1971) ........................................................................ 12

*Doe v. Reed*,
561 U.S. 186 (2010) ........................................................................ 20

*Eastman v. Thompson*,
No. 8:22-cv-00099-DOC-DFM (C.D. Cal. 2022) .................................... 19, 20, 27

*Egbert v. Boule*,
142 S. Ct. 1793 (2022) ...................................................................... 21

*Elrod v. Burns*,
427 U.S. 347 (1976) .................................................................... 21, 27

*Fish v. Kobach*,
840 F.3d 710 (10th Cir. 2016) ............................................................. 24

*Gibson v. Fla. Legislative Investigation Comm.*,
372 U.S. 539 (1963) ........................................................................ 20

*Groh v. Ramirez*,
540 U.S. 551 (2004) .................................................................. 15, 16, 17

*Harbor Healthcare Sys., L.P. v. United States*,
5 F.4th 593 (5th Cir. 2021) ............................................................ 21, 23

*In re Application for a Search Warrant*,
236 F. Supp. 3d 1066 (N.D. Ill. 2017) ..................................................... 18

*In re Qwest Commc'n Int'l. Inc.*,
450 F.3d 1179 (10th Cir. 2006) ............................................................ 19

*In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*,
11 F.4th 1235 (11th Cir. 2021) ............................................................. 23

*In re Search of Elec. Commc'ns in the Acct. of chakafattah gmail.com at Internet Serv. Provider Google, Inc.*,
802 F.3d 516 (3d Cir. 2015) ................................................................ 22

*In re Search Warrant Issued June 13, 3019*,
942 F.3d 159 (4th Cir. 2019) ..................................................... 24, 25, 26, 28

*In re Search Warrant No. 5165*,
470 F. Supp. 3d 715 (E.D. Ky. 2020) ...................................................... 18

*Maness v. Meyers*,
419 U.S. 449 (1975) ........................................................................ 27

*Maryland v. Garrison*,
   480 U.S. 79 (1987) ............................................................................................. 13

*Matter of Residence in Oakland, California*,
   354 F. Supp. 3d 1010 (N.D. Cal. 2019) ............................................................. 18

*Matter of Search of [Redacted] Washington, D.C.*,
   317 F. Supp. 3d 523 (D.D.C. 2018) .................................................................... 18

*Matter of Search of 624 NE 2nd St., McMinnville, OR*,
   No. 3:17-MC-00588-AC, 2019 WL 13074679 (D. Or. July 16, 2019), report and
   recommendation adopted sub nom. *Matter of Search of 524 NE 2d St., McMinnville, OR*, No.
   3:17-MC-00588-AC, 2019 WL 13074678 (D. Or. Oct. 4, 2019) ........................................ 22

*Perry v. Schwarzenegger*,
   591 F.3d 1147 (9th Cir. 2010) ............................................................................ 20

*Richey v. Smith*,
   515 F.2d 1239 (5th Cir. 1975) ............................................................................ 22

*Ross v. Meese*,
   818 F.2d 1132 (4th Cir. 1987) ............................................................................ 22

*Stanford v. Texas*,
   379 U.S. 476 (1965) ........................................................................................... 12

*United States v Shigemura*,
   664 F.3d 310 (10th Cir. 2011) ............................................................................ 11

*United States v. Ary*,
   518 F.3d 775 (10th Cir. 2008) ............................................................................ 19

*United States v. Bacon*,
    900 F.3d 1234 (10th Cir. 2018) ......................................................................... 21

*United States v. Brakeman*,
   475 F.3d 1206 (10th Cir. 2006) .......................................................................... 11

*United States v. Carey*,
   172 F.3d 1268 (10th Cir.1999) ........................................................................... 12

*United States v. Chadwick*,
   433 U.S. 1 (1977) ............................................................................................... 16

*United States v. Chavez*,
   No. 1:21-CR-00294-JCH-1, 2022 WL 252355 (D.N.M. Jan. 27, 2022) ............... 17

*United States v. Cooper*,
   654 F.3d 1104 (10th Cir. 2011) .......................................................................... 17

*United States v. Elliott*,
   No. CR 14-3822 RB, 2015 WL 13667417 (D.N.M. Oct. 21, 2015) ...................... 15

*United States v. Gantt*,
   194 F.3d 987 (9th Cir.1999) ............................................................................... 16

*United States v. Griffith*,
   867 F.3d 1265 (D.C. Cir. 2017) .................................................................... 12, 15

*United States v. Guarino*,
   729 F.2d 864 (1st Cir. 1984) .............................................................................. 12

5

Case 1:22-mc-00023-RB-KK   Document 6   Filed 07/08/22   Page 6 of 30

*United States v. Hubbell*,
   530 U.S. 27 (2000) ........................................................................................ 17
*United States v. Leary*,
   846 F.2d 592 (10th Cir. 1988).................................................... 11, 12, 14
*United States v. Riccardi*,
   405 F.3d 852 (10th Cir. 2005).................................................... 13, 21
*United States v. Smith*,
   424 F.3d 992 (9th Cir. 2005)............................................................ 16
*United States v. Sterling*,
   No. CR 03-2566 JB, 2006 WL 8444153 (D.N.M. May 8, 2006) .................... 11, 12, 14, 15
*United States v. Suggs*,
   998 F.3d 1125 (10th Cir. 2021).................................................... 14, 17
*United States v. Thompson*,
   667 F. Supp. 2d 758 (S.D. Ohio 2009) ........................................... 15
*United States v. Walser*,
   275 F.3d 981 (10th Cir. 2001).......................................................... 13
*United States v. Wijetunge*,
   No. CRIM.A. 15-144, 2015 WL 5098667 (E.D. La. Aug. 31, 2015) ............ 15
*United States v. Williamson*,
   439 F.3d 1125 (9th Cir. 2006)........................................................ 16
*United States v. Wint*,
   No. 1:12-CR-85-JGM-01, 2014 WL 1453350 (D. Vt. Apr. 14, 2014) .......... 15
*United States v. Wright*,
   431 F. Supp. 3d 1175 (D. Nev. 2020), *aff'd on other grounds*, No. 20-10303, 2022 WL 67341
   (9th Cir. Jan. 6, 2022)............................................................................ 18
*Upjohn Co. v. United States*,
   449 U.S. 383 (1981) .................................................................. 19, 28
*Voss v. Bergsgaard*,
   774 F.2d 402 (10th Cir. 1985)........................................................ 14
*Wellington v. Daza*, No.
   17-CV-0732 JAP, 2019 WL 366295 (D.N.M. Jan. 30, 2019), *aff'd*, 795 F. App'x 605 (10th
   Cir. 2020) ...................................................................................... 11
*Wong Sun v. United States*,
   371 U.S. 471 (1963) .................................................................. 24, 26

## Statutes and Constitutional Provisions

42 U.S.C. § 1983.................................................................................... 21
5 U.S.C. APP. 3 § 8E(b)(1)........................................................................ 9
5 U.S.C. APP. 3 § 8E(b)(4)........................................................................ 9
U.S. Const. amend. I .................................................................... passim
U.S. Const. amend. IV .................................................................. passim
U.S. Const. amend. V..................................................................... passim
U.S. Const. amend. VI................................................................... passim

**Other Authorities**

Martyn Casserly, "How to add a second face to Face ID," *MacWorld* (Apr. 7, 2021) ................ 18

**Rules**

Fed. R. Civ. P. 65(b)(1) ........................................................................................................ 28
Fed. R. Crim. P. 41(d) ..................................................................................................... 11, 16
Fed. R. Crim. P. 41(g) ............................................................................................... passim

**AMENDED MOTION FOR RETURN OF SEIZED PROPERTY UNDER FED. R. CRIM.
P. 41(g) AND REQUEST FOR INJUNCTIVE AND OTHER RELIEF**

John C. Eastman (hereinafter movant), through undersigned counsel, respectfully asks this Court to order the return of property seized during the execution of a warrant on movant's person, enjoin the government from searching the device, and issue a temporary restraining order preserving the status quo until these matters can be fully litigated. In support of this motion, movant asserts the following:

**BACKGROUND**

On the evening of June 22, 2022, federal agents served a search warrant (Exhibit 1) on movant while movant was exiting a restaurant. Movant asked to see the warrant, but the executing officer refused.  Movant was frisked. Movant's phone—an iPhone Pro 12—was seized. Movant was forced to provide biometric data to open said phone. Movant was not provided a copy of the warrant until after his phone was seized, and even then, he was only given a copy of the search warrant but not the supporting affidavit referenced in it.

The federal agents identified themselves as FBI agents, but they appeared to be executing a warrant issued at the behest of the Department of Justice's Office of the Inspector General (OIG). *See* Ex. 1 (noting that after seizure, the phone is to be transported "to Washington, D.C., or to the DOJ-OIG forensic laboratory in Northern Virginia").

While movant is an attorney, movant has never worked for the Department of Justice.

The warrant authorized a search of movant's person and the area within movant's immediate control. Ex. 1 at 2. The warrant authorized seizure of "any electronic or digital device—including cell phones, USB devices, iPads, and computers identified in the affidavit—and all information in such devices." Ex. 1 at 3.

The warrant authorized:

> [T]he compelled display of any physical biometric characteristics (such as fingerprint/thumbprint, facial characteristics, or iris display) necessary to unlock any device(s) requiring such biometric access subject to seizure pursuant to this warrant for which law enforcement has reasonable suspicion that the aforementioned person(s)' physical biometric characteristics will unlock the device(s), to include pressing fingers or thumbs against and/or putting a face before the sensor, or any other security feature requiring biometric recognition of any of the devices, for the purpose of attempting to unlock the device(s)'s security features in order to search the contents as authorized by this warrant.

Ex. 1 at 3.

## ARGUMENT

## I.   UNDER RULE 41, THE SEIZED PROPERTY SHOULD BE RETURNED TO MOVANT

"A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). This warrant is unlawful for at least three reasons. *First*, OIG has outstripped its mandate by targeting a person outside of the Department of Justice. *Second*, the warrant does not describe with particularity the items to be seized, is overbroad, and provides no probable cause link to any suspected criminal activity, all in violation of the requirements of the Fourth Amendment. *Third*, the warrant authorized and resulted in a violation of Movant's Fifth Amendment rights, as well as rights secured by the First Amendment, privileges that protect the right to counsel contained in the Sixth Amendment, and fundamental privacy interests.

### A.   OIG Has No Jurisdiction Over Movant.

The OIG is authorized to, *inter alia*, "initiate, conduct and supervise such audits and investigations *in the Department of Justice*," and "investigate allegations of criminal wrongdoing or administrative misconduct by a person who is the head of *any agency or component of the Department of Justice*[.]" 5 U.S.C. APP. 3 § 8E(b)(1), (b)(4). An inspector general is necessarily

an internal looking organization. Its mandate extends to allegations of wrongdoing within the Department of Justice.

Movant is not now, nor has Movant ever been, an employee or officer of the Department of Justice. Movant has no contractual obligations with the Department of Justice. Movant is, therefore, outside of the OIG's jurisdiction.

**B.  The Warrant was Facially Invalid Under the Fourth Amendment.**

The warrant broadly authorized seizure of any of movant's electronic devices "identified in the affidavit—and all information in such devices."   Ex. 1.   The warrant is facially unconstitutional under the Fourth Amendment for at least three reasons.   First, because the referenced affidavit was not attached to the warrant, the warrant itself does not identify with the requisite particularity which devices are to be seized.  Second, the warrant's authorization for "all information in such devices" is unconstitutionally overbroad.  Third, the warrant does not even mention, much less describe with specificity, any particular crime for which evidence sought by the warrant might be relevant or include any information linking movant's devices or the information contained therein to any such crime, or even that said devices were likely to exist or be on movant's person.

**1.    The warrant does not describe the items to be seized with the particularity required by the Fourth Amendment**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, *and particularly describing the place to be searched, and the persons or things to be seized.*'" U.S. Const. amend. IV (emphasis added). The warrant itself does not provide a list of items to be seized.   Rather, it authorizes seizure of electronic devices "identified in the affidavit," but the affidavit was not attached.   In order to be incorporated by reference, "[a]n affidavit must be physically attached to the warrant, and the search warrant must

expressly refer to the affidavit and incorporate it into the search warrant with suitable words of reference. *United States v. Sterling*, No. CR 03-2566 JB, 2006 WL 8444153, at *9 (D.N.M. May 8, 2006) (emphasis added) (citing *United States v. Leary*, 846 F.2d 592, 603 (10th Cir. 1988)); *see also United States v. Brakeman*, 475 F.3d 1206, 1209 (10th Cir. 2006) ("[A]ffidavit for [a] warrant can be considered in assessing [the] particularity of [the] warrant when incorporated by reference and attached to [the] warrant."). Because the warrant itself fails to "particularly describe[e]" the things to be seized, it is unconstitutional on its face.

Moreover, without the particularity described in the affidavit or other information relied upon by the magistrate judge, the warrant improperly limits movant's ability to demonstrate his aggrieved position as to the unlawful search and seizure of his property. *See* Fed. R. Crim. P. 41(d). By failing to provide the affidavit or other information, it shows an intent by the Government to prevent movant from developing his challenges to the warrant as an aggrieved party. Fed. R. Crim. P. 41(g). This omission limits movant's ability to evaluate the extent of his injury and emphasizes that Movant has no other remedy at law. *See United States v Shigemura*, 664 F.3d 310, 312 (10th Cir. 2011) ("A district court should exercise its equitable power to grant relief only if the Rule 41(g) movant shows irreparable harm and an inadequate remedy at law.") (quotations and citations omitted). As this Court recently explained, in the context of harm analysis, "a threat of future criminal proceedings is speculative." *Wellington v. Daza*, No. 17-CV-0732 JAP, 2019 WL 366295, at *4 (D.N.M. Jan. 30, 2019), *aff'd*, 795 F. App'x 605 (10th Cir. 2020). Movant cannot, therefore, rely on future criminal discovery to evaluate whether the government had probable cause for this expansive search of his person and data.

     **2.**    **The warrant's authorization for seizure of "all information in such devices" is unconstitutionally overbroad.**

Courts have long held that a warrant with an "indiscriminate sweep" is "constitutionally intolerable." *Stanford v. Texas*, 379 U.S. 476, 486 (1965); *see also Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) (Stewart, J., plurality) (explaining the "specific evil" of an overbroad warrant is "a general, exploratory rummaging in a person's belongings"); *United States v. Griffith*, 867 F.3d 1265, 1275 (D.C. Cir. 2017); *United States v. Guarino*, 729 F.2d 864, 866 (1st Cir. 1984). "[S]earches deemed necessary should [therefore] be as limited as possible." *Coolidge*, 403 U.S. at 467.

The warrant's authorization to seize "all information in such devices," quite apart from the failure to specify which devices, does not provide *any* limit, much less provide a particularized description, of what information can be seized.  Instead, it operates as a general warrant, allowing for an unconstitutional "exploratory rummaging" through movant's electronic data.  *See Leary*, 846 F.2d at 600 ("This [particularity] requirement prevents a general exploratory rummaging in a person's belongings....")).  As this Court has previously recognized, "General warrants are at the heart of the Fourth Amendment's prohibition. Those searches that are "deemed necessary should be as limited as possible. Here the specific evil is the 'general warrant' abhorred by the colonists...." *Sterling*, 2006 WL 8444153, at *5 (quoting *Coolidge*, 403 U.S. at 467 and citing *Leary*, 846 F.2d at 600 ("This [particularity] requirement prevents a general exploratory rummaging in a person's belongings....")).

In *United States v. Carey*, 172 F.3d 1268, 1271 (10th Cir.1999), the Tenth Circuit applied the particularity requirement to the search of computer files. As summarized in a subsequent decision:

> The underlying premise in *Carey* is that officers conducting searches (and the magistrates issuing warrants for those searches) cannot simply conduct a sweeping, comprehensive search of a computer's hard drive. Because computers can hold so much information touching on many different areas of a person's life, there is a greater potential for the

> "intermingling" of documents and a consequent invasion of privacy when police execute a search for evidence on a computer.... Thus, when officers come across computer files intermingled with irrelevant computer files, they may seal or hold the computer pending approval by a magistrate of the conditions and limitations on a further search of the computer.... Officers must be clear as to what it is they are seeking on the computer and conduct the search in a way that avoids searching files of types not identified in the warrant. *United States v. Walser*, 275 F.3d 981, 986 (10th Cir. 2001) (internal quotations and citations omitted).

*United States v. Riccardi*, 405 F.3d 852, 862–63 (10th Cir. 2005).  The Tenth Circuit then noted that its "case law therefore suggests that warrants for computer searches must affirmatively limit the search to evidence of specific federal crimes or specific types of material."  *Id.*  It then invalidated the warrant at issue because it "was not limited to any particular files, or to any particular federal crime."  Instead, as here, the warrant "authorized [among other things] the 'seizure' of [the individual's] computer … and all electronic media stored within such devises. *Id.* (citing Motion to Suppress Physical Evidence, R. Vol. I Doc. 25, Attachment D, at 1). It commanded the executing officers to "execute this warrant by *seaching* the ... thing or means of conveyance hereinbefore specified for such items, and to seize and hold such items to be dealt with according to law and make due return of this warrant whether executed or not." *Id.*  "By its terms," the Court added, "the warrant thus permitted the officers to search for anything—from child pornography to tax returns to private correspondence. It seemed to authorize precisely the kind of 'wide-ranging exploratory search[ ] that the Framers intended to prohibit.'" *Id.* at 863 (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)).

Because modern smart phones are mini computers, the warrant's overly broad authorization to seize "all information" contained in it is likewise a violation of the Fourth Amendment's core prohibition on general warrants.  And the warrant's subsequent requirement that review of content cannot be undertaken without further approval of a court does not remedy the unconstitutionally overbroad seizure.  The warrant itself does not set out limiting procedures,

provides no indication that Movant will even be privy to whatever procedures a court might in the future approve, and even if adequate procedures were established to filter out privileged material, such would not address the "general warrant" aspects of the warrant.  The fact is that the warrant authorized the government to "seize" all of the information stored or accessible on Movant's cell phone, and then to search that information at some unspecified time and in some unspecified manner, in furtherance of some unspecified investigation into conduct that might violate some unspecified crime or crimes.  This is exactly a "license for the sort of general rummaging [that is] outlawed by the Fourth Amendment."  *United States v. Suggs*, 998 F.3d 1125, 1132–33 (10th Cir. 2021).

> **3.    The warrant does not even mention, much less describe with specificity, any particular crime for which evidence sought by the warrant might be relevant or include any information linking movant's devices or the information contained therein to any such crime, or even that said devices were likely to exist or be on movant's person.**

The Fourth Amendment also requires a finding of probable cause that a search will yield evidence related to a specific crime.  "The particularity requirement [described in subsection I.b.i above] also ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Sterling,* 2006 WL 8444153, at *5 (quoting *Leary*, 846 F.2d at 600, in turn quoting *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985)).  The warrant mentions no crime at all, much less any specific crime, and even if the specifics necessary to support a finding of probable cause related to a specific crime are contained in the supporting affidavit, the affidavit was not attached to the warrant and therefore cannot serve to cure the warrant's facial defect on this score.  As the Supreme Court has held, "[t]he fact that the application adequately described the 'things to be seized' does not save the warrant from its facial invalidity," because "[t]he Fourth Amendment by its terms requires particularity in the

warrant, not in the supporting documents." *Sterling*, 2006 WL 8444153, at *6 (quoting *Groh v. Ramirez*, 540 U.S. 551, 557 (2004)).

Moreover, the warrant provides no allegation that Movant owned, possessed, or had control over *any* electronic devices. True, many people now own cellular phones. But this warrant provides "no indication otherwise of [movant's] ownership of a cell phone at any time. *Griffith*, 867 F.3d at 1272. Nor does the warrant establish probable cause that Movant owns any other electronic devices that "do not approach cellphones in their ubiquity[.]" *Id.*

This issue is compounded by the fact that the warrant gives no indication that evidence of any wrongdoing would be found on a cell phone or other electronic device. "Because a cell phone, unlike drugs or other contraband, is not inherently illegal, there must be reason to believe that a phone may contain evidence of the crime." *Id.* at 1274. The burden for seizure is therefore higher, and this warrant does not remotely meet it.

**C. The Executing Agent's Refusal to Provide Movant With the Warrant "At The Outset" Was Unreasonable and Therefore a Separate Fourth Amendment Violation.**

Despite Movant's explicit request to see a copy of the warrant before surrendering his cell phone, the lead FBI agent refused to provide Movant with a copy of the warrant "at the outset." Exhibit 2, Eastman Decl. ¶¶ 4-6. Although the Supreme Court once noted in a passing footnote "that neither the Fourth Amendment nor Rule 41 … requires the executing officer to serve the warrant on the owner before commencing the search," *Groh v. Ramirez*, 540 U.S. 551, 562 n.5 (2004), that statement is "*dicta*." *United States v. Thompson*, 667 F. Supp. 2d 758, 763 (S.D. Ohio 2009); *United States v. Wint*, No. 1:12-CR-85-JGM-01, 2014 WL 1453350, at *5 (D. Vt. Apr. 14, 2014); *United States v. Wijetunge*, No. CRIM.A. 15-144, 2015 WL 5098667, at *7 (E.D. La. Aug. 31, 2015); *but see United States v. Elliott*, No. CR 14-3822 RB, 2015 WL 13667417, at *5 (D.N.M. Oct. 21, 2015) (incorrectly describing the *Groh* footnote as a holding). Moreover, the Supreme

Court also suggested in that same footnote that it might be "unreasonable to refuse a request to furnish the warrant at the outset of the search when, as in this case, an occupant of the premises is present and poses no threat to the officers' safe and effective performance of their mission…."— an issue which was not presented by the case.[1]  Both before and after the *Groh* decision, the Ninth Circuit has repeatedly held that, "[a]bsent exigent circumstances, Rule 41(d) requires service of the warrant *at the outset* of the search on persons present at the search of their premises."  *United States v. Williamson*, 439 F.3d 1125, 1132 (9th Cir. 2006) (emphasis added) (quoting *United States v. Gantt*, 194 F.3d 987, 1000 (9th Cir.1999),[2] and citing *United States v. Smith*, 424 F.3d 992, 1006-07 (9th Cir. 2005)).

The reasoning of the Ninth Circuit's decisions is persuasive, and ought to be followed by this Court.  "The Supreme Court has repeatedly held," it has noted, "that an essential function of the warrant is to 'assure[] the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.'"  *Williamson*, 439 F.3d at 1132 (quoting *Gantt*, 194 F.3d at 1001, in turn quoting *United States v. Chadwick*, 433 U.S. 1, 9 (1977), *abrogated on other grounds*, *California v. Acevedo*, 500 U.S. 565 (1991)).  That "essential function" cannot be fulfilled if the warrant is not provided "at the outset."

---

[1] The Supreme Court itself subsequently reiterated that the text of the Fourth Amendment does not require in all cases that a warrant be provided before a search is conducted, but it did not in the case address the suggestion in *Groh* that refusal to do so might be "unreasonable" in particular circumstances such as those recognized in the several Ninth Circuit opinions discussed above. *United States v. Grubbs*, 547 U.S. 90, 99 (2006) (citing *Groh*).

[2] The concurring opinion in *United States v. Manaku* states that *Grubbs* overruled *Gantt*'s holding that officers must deliver a complete copy of the warrant at the outset of the search.  2022 WL 2127232, * 5 (9th Cir. June 14, 2022).  This statement in a concurrence is not binding authority and conflicts with statements from other 9th Circuit courts.  *See, e.g., United States v. Hector*, 474 F.3d 1150, 1154 (9th Cir. 2007) (declining to hold that *Grubbs II* overruled *Gantt*); *United States v. Bonner,* 2013 WL 3829404 at *5 (S.D. Cal. 2013) (assuming that *Gantt* rule continues to apply in 9th Cir.).

Indeed, that reasoning has already been utilized by this Court and by the Tenth Circuit in addressing the need for particularity in the warrant. "The Fourth Amendment requires particularity in the warrant, not in the supporting documents. This is so that the description of what is sought to be seized is written in, or incorporated into, the warrant to ensure that the executing officer(s) stay within the specific bounds set by the issuer." *United States v. Chavez*, No. 1:21-CR-00294-JCH-1, 2022 WL 252355, at *14 (D.N.M. Jan. 27, 2022) (quoting or citing *United States v. Cooper*, 654 F.3d 1104, 1126 (10th Cir. 2011); *Groh v. Ramirez*, 540 U.S. 551, 557 (2004); and *United States v. Suggs*, 998 F.3d 1125, 1136 (10th Cir. 2021) (internal quotations omitted)).

There are no exigent circumstances here that would have precluded the executing officer from providing Movant with a copy of the warrant "at the outset"—before his phone had been seized. And had that been done, Movant would have been able to call the officer's attention to the several constitutional infirmities evident on the face of the warrant, thus preventing the unconstitutional seizure in the first place.

   **D.  The Search And Seizure Authorized By The Warrant Also Violates The First And Fifth Amendments And Privileges That Further The Right To Counsel Protected By The Sixth Amendment.**

   **1.  The warrant's authorization to compel Movant to provide access to a cell phone with personal biometric information violates the Fifth Amendment.**

Under *United States v. Hubbell*, the target of a request for action holds a Fifth Amendment right against self-incrimination where the action is itself a "statement of fact." 530 U.S. 27, 36 (2000) ("By producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic." (internal quotation marks omitted)).

In the context of biometrics, compelled use of facial recognition is testimonial because it reveals (a) that the subject has unlocked the phone previously and (b) that the subject exercises

some degree of control over the phone. *United States v. Wright*, 431 F. Supp. 3d 1175, 1187 (D. Nev. 2020), *aff'd on other grounds*, No. 20-10303, 2022 WL 67341 (9th Cir. Jan. 6, 2022); *see also Matter of Residence in Oakland, California*, 354 F. Supp. 3d 1010, 1016 (N.D. Cal. 2019); *cf. In re Application for a Search Warrant*, 236 F. Supp. 3d 1066, 1073 (N.D. Ill. 2017) ("By using a finger to unlock a phone's contents, a suspect is *producing* the contents on the phone. With a touch of a finger, a suspect is testifying that he or she has accessed the phone before, at a minimum, to set up the fingerprint password capabilities, and that he or she currently has some level of control over or relatively significant connection to the phone and its contents.").[3]

When federal agents forced movant to unlock the seized phone with biometric data, the government forced movant to testify that (1) Movant recently used the phone; (2) Movant had some control over the contents of the phone; and (3) that Movant's control over the phone approached exclusivity.[4]  Although the courts in this circuit do not appear to have yet confronted this issue, the decisions by district courts elsewhere holding that the compelled use of biometric information violates the Fifth Amendment are persuasive, and should be followed.

> **2. The warrant authorizes seizure of information that is protected by the First Amendment, by attorney-client and work-product privileges that**

---

[3] A couple of district courts have held otherwise.  While recognizing that "[t]he law in this area is emerging and entirely unsettled," for example, the District Court for the Eastern District of Kentucky held that "the government may compel an individual's biometrics if there exists reasonable suspicion to believe that the individual has committed a criminal act for which the warrant authorizes an evidentiary search, *and* that the individual's biometric features will unlock the device."  *In re Search Warrant No. 5165*, 470 F. Supp. 3d 715, 724 (E.D. Ky. 2020); *see also Matter of Search of [Redacted] Washington, D.C.*, 317 F. Supp. 3d 523, 533 (D.D.C. 2018) (same). In our view, the cases cited in the text above are more consistent with the important protections provided by the Fourth Amendment.

[4] The model of phone in question only allows two faces to unlock a phone. *See* Martyn Casserly, "How to add a second face to Face ID," *MacWorld* (Apr. 7, 2021), available at https://www.macworld.com/article/676641/how-to-add-a-second-face-to-face-id.html.

**further the right to counsel protected by the Sixth Amendment, and by privacy rights.**

The warrant's authorization to seize "all information in" specified electronic devises is not only overbroad in violation of the Fourth Amendment, but also specifically covers information that another federal court has already held to be protected by the First Amendment and by Attorney-Client and Work-Product Privileges that further the right to counsel protected by the Sixth Amendment.  It also amounts to an unconstitutional intrusion on Movant's right to privacy.

Movant specifically does not waive any Attorney-Client and Work-Product Privileges. The search and seizure of the phone jeopardizes the improper disclosure of privileged information, both between Movant (in his capacity as a client) and his attorneys and between Movant (in his capacity as an attorney) and his clients.  The United States Supreme Court has repeatedly noted that "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Confidentiality will be "lost if the client discloses the substance of an otherwise privileged communication to a third party." *In re Qwest Commc'n Int'l. Inc*., 450 F.3d 1179, 1185 (10th Cir. 2006).  "The confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived." *Id*. Where disclosure to a third party is voluntary, the privilege is waived.  *Id.*  The Courts must further apply the same waiver analysis to the privilege to involuntary disclosures. *United States v. Ary*, 518 F.3d 775, 783 (10th Cir. 2008).

The cell phone that was seized contains access to Movant's email accounts, including emails that have been the subject of an intense, five-month privilege dispute between Movant and the U.S. House of Representatives Select Committee to Investigate the January 6th Attack on the U.S. Capitol.  Eastman Decl. ¶ 7; *see also Eastman v. Thompson*, No. 8:22-cv-00099-DOC-DFM (C.D. Cal. 2022).  That litigation has received extensive media attention, so it is hard to imagine

that the Department of Justice, which apparently submitted the application for the warrant at issue here, was not aware of it.

The district court for the Central District of California expressly determined that a number of Movant's emails—emails which are accessible through Movant's cell phone—are protected by the First Amendment's freedom of association, by attorney-client privilege, and/or by the work product doctrine.

With respect to the First Amendment, the California district court recognized that disclosing information related to political associations can "have a profound chilling effect on the exercise of political rights." *Id.*, Dkt. #356 at 22 (quoting *Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir. 2010) (citing *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539, 557 (1963))). It further recognized that the Supreme Court has therefore held that disclosure is only appropriate when there is "a sufficiently important governmental interest." *Id.* (quoting *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2383 (2021) (plurality opinion) (quoting *Doe v. Reed*, 561 U.S. 186, 196 (2010) (internal quotation marks omitted)). It accordingly held that some of movant's emails "are protected from disclosure." *Id.*

The California district court also found that hundreds of movant's emails—also accessible by the seized phone—are protected by attorney-client privilege and/or the work product doctrine. *Id.* at 26 ("the Court finds that 440 [of the disputed 559] documents are privileged").

In addition, by its very breadth, the warrant intrudes on significant privacy interests, both of Movant and of others whose communications with him are accessible on the seized cell phone.

### E. The Above Violations Constitute Irreparable Injury For Which Movant Has No Redress.

As the Tenth Circuit has held, Rule 41(g) "provides an equitable remedy that is available only if the movant 'can show irreparable harm and an inadequate remedy at law." *United States v.*

*Riccardi*, No. 20-3205, 2021 WL 3732261 (10th Cir. Aug. 24, 2021) (quoting *United States v. Bacon*, 900 F.3d 1234, 1237 (10th Cir. 2018) (internal quotation marks omitted)).  Movant has both irreparable harm and lack of an adequate remedy at law.

### 1.    Irreparable Harm

Movant's "irreparable harm" is threefold and evident in the initial violation.

First, the Constitutional violation against Movant is irreparable. The Supreme Court has held that the deprivation of a constitutional right "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  Movant has therefore satisfied the irreparable harm requirement with respect to the constitutional claims. As no indictment has issued, there is only a speculative possibility that Movant could vindicate his rights in a suppression hearing. And, unlike state actions, *see* 42 U.S.C. § 1983, there is effectively no cause of action to correct federal constitutional torts. *See Egbert v. Boule*, 142 S. Ct. 1793, 1810 (2022) (Gorsuch, J. concurring) (explaining that reliance on the dwindling case law suggesting the existence of a judge made constitutional cause of action would be "false hope").

Second, Movant is an attorney and the client of attorneys. This warrant authorized the seizure of "all information" on his phone without exclusion of privileged communications, either between Movant and his own clients, or between Movant and his attorneys.  Moreover, Movant has been engaged in civil disputes with the United States Congress over the past several months over the same events that appear to underly the warrant at issue here, necessitating communication with his own attorney. Data from such communications is present on the seized phone.

"[T]he ongoing intrusion into [Movant's] privacy and the continued possession of attorney–client privileged documents" is itself "an irreparable injury that can be cured only by Rule 41(g) relief." *Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593, 600 (5th Cir. 2021). Movant "remains injured as long as the government retains [his] privileged documents[,]" and

"[t]hat injury can only be made whole by the government returning and destroying its copies of the privileged material." *Id.* (citing *Richey v. Smith*, 515 F.2d 1239, 1242 n.5 (5th Cir. 1975)).

The release of attorney-client privileged communications and attorney work product is a bell that cannot be unrung. *See In re Search of Elec. Commc'ns in the Acct. of chakafattah gmail.com at Internet Serv. Provider Google, Inc.*, 802 F.3d 516, 529 (3d Cir. 2015) (explaining that where the government compels disclosure of attorney-client privileged information "no remedy assuages disclosure, and the privilege may very well be destroyed"). This is true whether Movant is acting in his capacity as attorney or as client. The injury to Movant is ongoing and cannot be repaired. The only solution is to return his device and all the information contained therein, as well as to order the destruction of any information that has already been retrieved or copied from the device.

Finally, the overly broad, "general warrant" aspects of the seizure of "all information" contained in Movant's phone also presents an irreparable injury. *See, e.g.*, *Ross v. Meese*, 818 F.2d 1132, 1133, 1135 (4th Cir. 1987) (holding that allegation, *inter alia*, of an "impermissible general warrant" violation of Fourth Amendment would, if established, constitute "irreparable harm for purposes of equitable jurisdiction"); *Matter of Search of 624 NE 2nd St., McMinnville, OR*, No. 3:17-MC-00588-AC, 2019 WL 13074679, at *6, *14 (D. Or. July 16, 2019), report and recommendation adopted sub nom. *Matter of Search of 524 NE 2d St., McMinnville, OR*, No. 3:17-MC-00588-AC, 2019 WL 13074678 (D. Or. Oct. 4, 2019) (holding that potential for privacy invasion from a search warrant of electronic devices so broad as to amount to a general warrant was likely irreparable injury).

### 2. Movant Has No Adequate Remedy At Law

Movant also has no adequate remedy at law for the irreparable harms discussed above. As several circuit courts have held, a "suppression" of evidence hearing in a criminal proceeding that

may never be brought "is not an adequate remedy."  If no charges are brought, Movant will not have suppression available to him as a potential remedy.  And even if they are brought, "suppression does not redress the government's intrusion into [Movant's] personal and privileged affairs."  *In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, 11 F.4th 1235, 1247 (11th Cir. 2021); *see also¸ Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593, 601 (5th Cir. 2021) ("A motion to suppress in a possible criminal proceeding does not redress [the] injury for two primary reasons. First, it is not certain that there ever will be criminal charges…. Second, suppression motions vindicate an interest entirely different from Rule 41(g) motions."). Rule 41(g) therefore provides a remedy that suppression cannot.  "It offers the remedy of returning to the Intervenors any improperly seized documents protected by privilege *before* the government has reviewed them," which is a "remedy that can address any potential injury by ensuring that it does not occur in the first place." *In re Sealed Search Warrant*, 11 F.4th at 1247.  And if the district court denies the Rule 41(g) motion, "immediate review" is available to preserve privacy, whereas "[r]eview later would be incapable of vindicationg [Movant's] privacy interests." *Id.*

## II.     IN THE ALTERNATIVE THIS COURT SHOULD ENJOIN THE GOVERNMENT FROM SEEKING AND/OR EXECUTING A WARRANT FOR THE CONTENT OF THE SEIZED PHONE.

If this Court is not prepared to order the government to return Movant's property, the Court should enjoin the government from searching the phone.  It is beyond dispute that the phone contains attorney-client privileged and work product materials.  The government's first warrant makes no provision for protecting this material; Movant has no assurances that a second warrant will be any different.  For the reasons set forth below, this Court should enter a preliminary injunction preventing the government from searching the phone until an appropriate procedure is

in place to protect important privileged information as well as to prevent an indiscrimate rummaging through Movant's other papers and communications that are not "particularly described" in the warrant.

A party seeking a preliminary injunction must show, 1) the movant is substantially likely to succeed on the merits, 2) the movant will suffer irreparable injury if the injunction is denied, 3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction, and 4) the injunction would not be adverse to the public interest. *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016). Movant meets each of those requirements.

### A. Likelihood of Success on the Merits

#### 1. Constitutional Claims

As argued above (Section II(B)-(D)), the initial seizure of Movant's phone was unconstitutional. In light of these constitutional violations, any search of the phone's contents, even pursuant to a facially valid subsequent warrant, would be a clear case of "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963). Movant is therefore likely to succeed on his claim that any search of the phone would be unconstitutional.

#### 2. Attorney-Client Privilege

To prove likelihood of success, a movant seeking to enjoin a law enforcement search on attorney-client privilege grounds must show that the government's proposed "filter team" protocol is legally flawed. *In re Search Warrant Issued June 13, 3019*, 942 F.3d 159, 176 (4th Cir. 2019).

In *In re Search Warrant*, the government seized materials containing attorney-client privileged information from a Baltimore law firm. *Id*. at 166. "Contemporaneously with issuance of the search warrant," the magistrate judge approved a "filter team" procedure proposed *ex parte* by the government. *Id*. at 165. The proposed filter team procedures were as follows:

• After seizing materials from the Law Firm, the Filter Team would identify and separate privileged and potentially privileged materials from materials that were not privileged. Under the Filter Protocol, privileged materials included "attorney-client information, attorney work product information, and client confidences that have not been waived";

• When seized materials were found by the Filter Team to be nonprivileged, the Filter Team AUSAs could forward such materials directly to the Prosecution Team, without the consent of the Law Firm or a court order (the "Privilege Assessment Provision");

• For privileged and potentially privileged materials, the Filter Team would decide whether any such seized materials were "responsive to the search warrant";

• For privileged and potentially privileged materials that were "responsive to the search warrant," the Filter Team AUSAs would place them in one of three categories:

    1. Seized materials that were privileged and could not be redacted;

    2. Seized materials that were privileged but could be redacted; or

    3. Seized materials that were potentially privileged (for example, when the Filter Team identified some possible exception, such as the crime-fraud exception, to a claim of privilege);

• After providing copies to counsel for Lawyer A of the seized materials identified as within categories 2 and 3, the Filter Team AUSAs would seek an agreement with counsel for Lawyer A concerning whether those materials could be forwarded to the Prosecution Team; and

• If the Filter Team AUSAs and counsel for Lawyer A disagreed on the handling of seized materials, the Filter Team AUSAs would submit such "items to the court for [a] determination regarding privilege and/or proposed redactions of the privileged material"

*Id*. at 165-66 (internal citations and pagination omitted).

The Fourth Circuit found these procedures insufficient. The court held that the magistrate judge's approval of these procedures "assign[ed] judicial functions to executive branch," *id*. at 176; improperly "delegated judicial functions to *non-lawyer* members of the Filter Team," *id*. at 177 (italics in original); prematurely authorized the Filter Team without

knowing the nature of the seized materials, *id*. at 178; and without first conducting adversarial proceedings, *id*.; and subverted attorney client relationships by prospectively authorizing the Team to seek waivers from firm clients, *id*. at 180.

The foregoing discussion shows the high level of scrutiny courts have properly applied to government searches of privileged materials.  Here, the government's warrant makes absolutely no mention of any procedures to protect privileged information on the seized phone, let alone procedures that would satisfy the standards for protection of privilege set forth in *In re Search Warrant* and similar cases.  The statement in warrant attachment B-1 that "the investigative team will not review the contents of the device(s) until further order of a court of competent jurisdiction" is clearly insufficient.  Ex. 1 at 3. The complete absence of any proposal from the government for protecting privileged information makes this an open and shut case for likelihood of success.

### B.  Irreparable Injury

#### 1.    Constitutional Claims

As argued above, the seizure of Movant's phone violated the Constitution in several respects.  *See*, Sec. II (B)-(D), *supra*.  In light of these constitutional violations, any search of the phone's contents, even pursuant to a facially valid subsequent warrant, would be a clear case of "fruit of the poisonous tree."  *Wong Sun v. United States*, 371 U.S. 471 (1963).  Moreover, the attorney-client privilege claims, discussed in more detail below, have a constitutional aspect as well.  *In re Search Warrant,* 942 F.3d at 174 ("[T]he attorney-client privilege and the work-product doctrine jointly support the Sixth Amendment's guarantee of effective assistance of counsel").

The Supreme Court has held that the deprivation of a constitutional right "unquestionably constitutes irreparable injury." *Burns*, 427 U.S. at 373. Movant has therefore satisfied the irreparable harm requirement with respect to the constitutional claims.

### 2.   Attorney-Client Privilege

"[A]n adverse party's review of privileged materials seriously injures the privilege holder." *In re Search Warrant*, 942 F.3d at 175. Separate and apart from the deprivation of constitutional rights, irreparable injury may also occur when privileged information is improperly revealed because "courts cannot always unring the bell once the information has been released." *Maness v. Meyers*, 419 U.S. 449, 460 (1975) (internal quotations omitted).

Movant is a practicing attorney and can be assumed to have a wide variety of privileged information on his phone. He has already successfully resisted a government attempt to gain unrestricted access to one of his email accounts. *Eastman v. Thompson, et al.*, 8:22cv99, ECF 356 (C.D. Cal. June 7, 2022) (holding that hundreds of privileged communications are protected from disclosure pursuant to congressional subpoena). Allowing government agents unrestricted access to the privileged materials on Movant's phone would clearly constitute irreparable harm.

Movant is also a client and privilege holder himself. Undersigned counsel has represented Movant in connection with multiple matters, including a congressional investigation. More importantly, Movant is widely believed to be the current target of a DOJ investigation relating to his representation of Donald Trump in 2020.[5] Allowing DOJ unrestricted access to Movant's attorney-client communications would therefore be an irreparable legal harm of the highest order.

### C.  Threatened Injury Outweighs the Injury to Opposing Party

---

[5] https://www.nytimes.com/2022/05/25/us/politics/pro-trump-lawyers-elector-scheme.html

As stated above, it is unclear what interest the DOJ Inspector General's office has in investigating a private attorney who has never worked at DOJ. Moreover, whatever valid investigative interest there may be in a DOJ/OIG investigation of John Eastman is easily outweighed by the harm an unrestricted cell phone search would cause by violating Dr. Eastman's constitutional rights and his clients' right to privileged communications. *In re Search warrant*, 942 F.3d at 181("The government should have been fully aware that use of a filter team in these circumstances was ripe for substantial legal challenges and should have anticipated that those challenges could delay its investigations.").

### D. Public Interest

"The purpose of the attorney-client privilege is to ensure full and frank communication between a client and his lawyer and thereby promote broader public interests in the observance of law and the administration of justice." *In re Search Warrant*, 942 F.3d at 173 (*citing, Upjohn*, 449 U.S. at 389). Granting an injunction in this case favors not only the interests of Movant's clients but the broader public's interest in upholding attorney-client privilege. It is further in the public interest not to allow unconstitutional law enforcement searches.

## III.   THIS COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER TO PRESERVE THE STATUS QUO WHILE THESE ISSUES ARE PROPERLY LITIGATED.

"The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

For the foregoing reasons, this Court should also issue a Temporary Restraining Order requiring that the government take no action with respect to Movant's phone and data (or any

copies already made) until the issues animating this motion can be worked out. This order is necessary because by the time briefing is complete with respect to the Preliminary Injunction, the government may already copy and review Movant's privileged information.

As is clear from the attached declaration and copy of the warrant, Movant is an attorney who keeps communications on his phone and the warrant has no provisions for addressing privilege issues in subsequent searches of his privileged data. The undersigned have communicated with government attorney's both in New Mexico and Main Justice, who have provided no assurances that they will take steps to preserve privilege.

The government appears to have taken no steps to inform the Magistrate Judge that Movant was an attorney or that this seizure would impact privileged information. As Movant has spent several months in litigation with the government about this very issue, there is no reasonable cause to believe that the government was unaware of this fact. If the affidavit reveals that the government completely failed to disclose this information to the magistrate judge, then there is no way to be sure—absent a direct order by this Court—that the Government will not pursue its second warrant before this litigation is completed.

## CONCLUSION

For the foregoing reasons Movant respectfully requests that this court order OIG to return Movant's property—both the cell phone and "all information" in it, as well as to destroy all copies of any information that has already been retrieved or copied from the device. Movant further requests in the alternative that any access to the cell phone and its information be stayed until he has a full and fair opportunity to assert and protect his Constitutional rights and the privileged communications of his numerous clients.

Respectfully Submitted,

/s/ Charles Burnham
Charles Burnham
Attorney for Defendant
Burnham & Gorokhov, PLLC
1424 K Street NW, Suite 500
Washington, DC 20005
(202) 386-6920 (phone)
(202) 765-2173 (fax)
charles@burnhamgorokhov.com


/s/ Joseph J. Gribble
Joseph J. Gribble
Local Counsel
Crowley & Gribble, P.C.
300 Central Ave SW, Suite 3500
Albuquerque, NM 87102
(505) 314-1450
(505) 314-1452 (fax)
jjg@crowleygribble.com