**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JOHN EASTMAN,

       Plaintiff,

v.                                             No. 1:22-mc-00023 RB/KK

UNITED STATES OF AMERICA,

       Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

       This matter is before the Court on Plaintiff John Eastman's Amended Motion for Return of Seized Property Under Fed. R. Crim. P. 41(g) and Request for Injunctive and Other Relief, filed on July 8, 2022. (Doc. 6.) Eastman alleges that federal agents violated his constitutional rights when they served a search warrant on him on June 22, 2022, and seized his phone. He asks the Court to order the Government to return his phone, or alternatively, to enter a temporary restraining order (TRO) requesting that the Government take no action with his phone until the Court has ruled on the issues he raises in this lawsuit. In this Opinion, the Court takes up Eastman's request for a TRO. For the reasons discussed in this opinion, the Court will deny the TRO and enter a briefing schedule order on Eastman's remaining requests.

**I.      Factual and Procedural Background**

       Federal Agents served a warrant on Eastman on June 22, 2022, as he exited a restaurant. (*See* Doc. 6 at 8.) The warrant authorized agents to search "[t]he person of John Eastman and the area within his immediate control, including any clothing, garments, bags, or personal effects." (Doc. 6-1 at 2.) The warrant described the things to be seized as "[a]ny electronic or digital devices—including cell phones, USB devices, iPads, and computers identified in the affidavit— and all information in such devices." (*Id.* at 3.) Pursuant to the warrant, agents seized Eastman's

1

iPhone Pro 12. (Doc. 6 at 8.) Eastman "was forced to provide biometric data to open said phone" and "was not provided a copy of the warrant until after his phone was seized . . . ." (*Id.*) Eastman, who is an attorney as well as the client of an attorney in litigation pending outside of this district, asserts that his phone contains material protected by the First and Sixth Amendments. (*See id.* at 8, 18–20.)

Eastman filed a Motion for Return of Property Under [Federal Rule of Criminal Procedure] 41(g) in this Court on June 27, 2022. (Doc. 1.) He served a summons on the United States on July 5, 2022, and its answer is due on September 6, 2022. (*See* Doc. 3.) *See also* Fed. R. Civ. P. 12(a)(2). The Government has not yet entered an appearance; accordingly, it has not received notice through CM/ECF of the motion under consideration.[1] (*See* Notice of Electronic Filing attached to Doc. 6.)

## II.   Legal Standard

"The requirements for a TRO issuance are essentially the same as those for a preliminary injunction order." *People's Tr. Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138 (D.N.M. 2018) (citations omitted). "The primary differences between a TRO and a preliminary injunction are that a TRO may issue without notice to the opposing party and that TROs are limited in duration." *Id.* (citing Fed. R. Civ. P. 65(b)). "In both cases, however, injunctive relief is an 'extraordinary remedy,' and the movant must demonstrate a 'clear and unequivocal right' to have a request granted." *Id.* (citations omitted).

"To establish its right to preliminary relief under rule 65(b), a moving party must demonstrate that 'immediate and irreparable injury, loss, or damage will result' unless a court issues the order." *Id.* (quoting Fed. R. Civ. P. 65(b)). Thus, Eastman must establish: "(1) a likelihood of success on the merits; (2) a likelihood that [he] will suffer irreparable harm if the

---

[1] On the Information Sheet for T.R.O. attached to the motion, Eastman states that "the opposing party(ies) and their attorney(s) [have] been notified . . . [c]ontemporaneously with filing. (emailed and mailed)." (*See* Doc. 6-4.)

injunction is not granted; (3) the balance of equities is in [his] favor; and (4) the preliminary injunction is in the public interest." *See Republican Party of N.M. v. King*, 741 F.3d 1089, 1092 (10th Cir. 2013) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)); Fed. R. Civ. P. 65. "The likelihood-of-success and irreparable-harm factors are 'the most critical' in the analysis. *Legacy Church, Inc. v. Kunkel*, 455 F. Supp. 3d 1100, 1132 (D.N.M. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). "It is insufficient, moreover, that a moving party demonstrate that there is only a 'possibility' of either success on the merits or irreparable harm." *Id.* (quoting *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276 (10th Cir. 2016)).

"[T]he limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held . . . ." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quotation marks and citation omitted). "A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (citation omitted). "[B]ecause a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th Cir. 2012) (citations omitted).

## III.   Analysis

Eastman seeks a TRO to prohibit the Government from taking "action with respect to [his] phone and data (or any copies already made) until the issues animating this motion can be worked out."[2] (Doc. 6 at 28–29.) Because Eastman has not established a likelihood of success on the merits of his constitutional claims or an unequivocal right to relief from an immediate, irreparable injury,

---

[2] In his request for preliminary injunction, Eastman seeks an order "preventing the government from searching the phone until an appropriate procedure is in place to protect important privileged information as well as to prevent an indiscriminate rummaging through [his] other papers and communications . . . ." (Doc. 6 at 22–23.) He also seeks the return of his phone. (*Id.* at 8.)

the Court finds that the temporary restraining order should be denied but will order briefing on the motion for preliminary injunction.

### A.     Likelihood of Success on the Merits

Eastman argues that the agents' seizure of his phone violated his rights under the First, Fourth, Fifth, and Sixth Amendments. (*See* Doc. 6.)

### 1.     First Amendment claim

Eastman argues that the phone contains information protected by the First Amendment right to political association. (Doc. 6 at 19–20.) In support of this claim, he cites a civil case to which he is a party in the Central District of California. (*Id.*) There, Eastman sued "Chapman University and the [Select Committee to Investigate the January 6 Attack on the US Capitol ('Select Committee')] to block a subpoena to Chapman seeking Dr. Eastman's documents relating to the 2020 election and the January 6th Capitol attacks." *Eastman v. Thompson*, No. 8:22-CV-00099 DOC/DFM, 2022 WL 1407965, at *1 (C.D. Cal. Jan. 25, 2022). He applied for a TRO and moved for a preliminary injunction, claiming that the subpoena violated his rights under the First and Fourth Amendments and authorized seizure of documents protected by the attorney-client privilege and the work product privilege. *Id.* Given that Eastman filed the complaint on January 20, 2022, and his response to the subpoena was due the following day, the Court granted the TRO through January 24, 2022, "to allow thoughtful decision-making on the merits." *Id.* at *4. On January 25, 2022, the court denied the motion for preliminary injunction, noting that Congress's interest in understanding the events of January 6 attack on the Capitol and the related "public interest . . . is weighty and urgent." *See id.* at *8. Notably, Eastman "identified neither any specific associational interest threatened by production of [the disputed emails], nor any particular harm likely to result from their production." *Id.* His summary argument "that the subpoena [was] a 'clear

4

effort to chill the speech' of the Select Committee's 'political adversaries'" fell flat. *Id.*

Similarly, here, Eastman generally points to emails that he claims are protected by a First Amendment right to political association. Yet he acknowledges the Supreme Court's holding "that disclosure is only appropriate when there is 'a sufficiently important governmental interest.'" *Eastman v. Thompson*, No. 8:22-cv-00099, Doc. 356 at 22 (quoting *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2383 (2021) (plurality opinion)); *see also Rio Grande Found. v. City of Santa Fe*, 437 F. Supp. 3d 1051, 1062 (D.N.M. 2020), *appeal dismissed sub nom.*, 7 F.4th 956 (10th Cir. 2021), *cert. denied sub nom.*, 142 S. Ct. 1670 (2022) ("Compelled disclosures must survive exacting scrutiny – there must be a substantial relationship between the governmental interest and the information that must be disclosed.") (citations omitted). The undersigned agrees with my colleague's opinion in the Central District of California: The Government's interest in investigating the January 6 attacks on the Capitol is substantial. *See Rio Grande Found.*, 437 F. Supp. 3d at 1062 ("To withstand this scrutiny, the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights.") (quoting *John Doe. No. 1 v. Reed*, 561 U.S. 186, 196 (2010)). Because Eastman has not identified "any specific associational interest . . . nor any particular harm likely to result from" disclosure of information on his phone, *see Eastman*, 2022 WL 1307965, at *8, he has not met his burden to show a likelihood of success on a violation of his rights under the First Amendment.

### 2.     Fourth Amendment claim

The Fourth Amendment requires warrants to "particularly describ[e] the places to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Eastman contends that the warrant here violated his Fourth Amendment rights because (1) it did not describe the items to be seized with particularity; (2) the authorization for "all information in such devices" is

overbroad; and (3) the warrant did not mention any criminal activity for which evidence was sought. (Doc. 6 at 10.) The Court finds that Eastman has not met his burden to show a likelihood of success on the merits on this issue.

To establish that the warrant is invalid on its face, Eastman relies primarily on *United States v. Sterling*, No. CR 03-2566 JB, 2006 WL 8444153, at *9 (D.N.M. May 8, 2006). There, "[i]n the space provided for a description of the items to be seized, the warrant describe[d the defendant's] residence." *Id.* "The warrant [did] not provide any description of the items to be seized." *Id.* The court found that this lack of particularity rendered the warrant invalid. *Id.*

The warrant here is more specific. It authorized the seizure of "[a]ny electronic or digital devices—including cell phones, USB devices, iPads, and computers identified in the affidavit— and all information in such devices." (*See* Doc. 6-1 at 3.) Eastman argues that because the affidavit was not attached to the warrant, the warrant failed to describe the items to be seized with sufficient particularity. (*See* Doc. 6 at 10–11.) The warrant in *Sterling* also mentioned, but did not incorporate, an affidavit. 2006 WL 8444153, at *9. On finding the warrant was facially invalid, the court next determined "whether the good-faith exception applie[d]." *Id.* (citing *United States v. Leary*, 846 F.2d 592, 607 (10th Cir. 1988)). "In determining whether the exception should be applied, the 'good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.' " *Id.* (quoting *Leary*, 846 F.2d at 607). "The Court must look at all of the circumstances and the text of the warrant itself, and assume that the officers have a reasonable knowledge of what the law prohibits." *Id.* (citing *Leary*, 846 F.2d at 607).

In *Sterling*, the court found "that the warrant 'was so patently defective' that it was not 'reasonable for [the officer] to rely on [it].'" *Id.* at *10 (quoting *Groh v. Ramirez*, 540 U.S. 551,

561 (2004)). Rather than describing items in an overbroad manner, the warrant in *Sterling* "did not describe the items to be seized *at all.*" *Id.* (quoting *Groh*, 540 U.S. at 558). Again, the warrant here was more specific and allowed officers to seize only electronic and digital devices found on Eastman's person and the area within his immediate control. This was sufficiently specific and reasonably assured Eastman of the boundaries of the agents' power, whether the affidavit was attached or not. *See Groh*, 540 U.S. at 561. As Eastman does not cite a case that disallowed a warrant under circumstances similar to those here, he fails to carry his burden to show a likelihood of success on the merits of a Fourth Amendment claim on this basis.

Eastman also argues that the warrant is overbroad because it authorizes the seizure of "all information" in the electronic devices. (Doc. 6 at 11.) He contends that "it operates as a general warrant, allowing for an unconstitutional 'exploratory rummaging' through [his] electronic data." (*Id.* (quoting *Leary*, 846 F.2d at 600).) He ignores, though, the caveat that "[t]he investigative team will not review the contents of the device(s) until further order of a court of competent jurisdiction." (Doc. 6-1 at 3.) Thus, agents will obtain a second warrant before searching the phone. The Court agrees that the second search warrant will need to "affirmatively limit the search to evidence of specific federal crimes or specific types of material." *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005) (citations omitted). Eastman's Fourth Amendment concerns on this issue are unfounded at present.

Finally, Eastman contends that the warrant is facially invalid because it does not mention any particular crime for which the evidence was sought. (Doc. 6 at 14.) He does not cite any authority on point. (*See id.*) The Court agrees that a warrant authorizing a *search* of electronic devices must specify the type of files or the crime for which evidence is sought. *See, e.g.*, *Riccardi*, 405 F.3d at 862. Without such particularity, agents could "search for anything—from child

7

pornography to tax returns to private correspondence." *Id.* at 863. But had the warrant here authorized the agents to seize only those electronics that were connected to a particular crime, then the agents would have arguably needed to search the electronics on site to verify that evidence of the crime was present. As such a search would likely be impractical, the agents' procedure of obtaining one warrant for seizure, and a second, more particular warrant for search, appears to fall within the confines of the Fourth Amendment. Eastman fails to carry his burden to show a likelihood of success on the merits of his Fourth Amendment claim.[3]

### 3.     Fifth Amendment claim

Eastman next argues that agents violated his Fifth Amendment rights by compelling him to open his phone with biometric data. (Doc. 6 at 17–18.) He cites out of district cases that have found such a violation because when a person opens a phone with a thumbprint, facial recognition, or other biometric data, they necessarily admit that they have control over the phone and its contents. (*See id.* (citations omitted).) As Eastman acknowledges that "the courts in this circuit do not appear to have yet confronted this" question and that there is a split of authority in the courts that have, he fails to meet his burden to show a likelihood of success on the merits of this claim. (*See id.* at 18.) While this issue may be "so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation[,]" he has "not shown a strong likelihood of success on the merits on this issue, which is the applicable test." *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 423 F. Supp. 3d 1066, 1073 (D. Colo.

---

[3] Eastman also argues that the agent's refusal to provide him with a copy of the warrant at the outset of the encounter violated his Fourth Amendment rights. (Doc. 6 at 15.) He acknowledges, though, that the Supreme Court has noted in a footnote "that neither the Fourth Amendment nor Rule 41 . . . requires the executing officer to serve the warrant on the owner before commencing the search." (*Id.* (quoting *Groh*, 540 U.S. at 562 n.5)).) The Court finds that Eastman has not shown a likelihood of success on the merits of this point.

2019) (citing *Nken*, 556 U.S. at 434) (internal quotation omitted).

### 4.      Sixth Amendment claim

Finally, Eastman argues that the phone contains information protected by the attorney-client and work-product privileges. (Doc. 6 at 19–20.) A party asserting either privilege has the burden to show it applies. *See In re Grand Jury Proceedings*, 616 F.3d 1172, 1185 (10th Cir. 2010). Eastman does not point to specific documents in his email that are protected by a privilege, nor does he argue that the search of an attorney's phone is per se unreasonable. "Courts consistently have upheld searches of law offices where . . . the attorney at issue was the target of a criminal investigation." *See Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 959 (3d Cir. 1984) (gathering cases). In such circumstances, courts "scrutinize carefully the particularity and breadth of the warrant authorizing the search, the nature and scope of the search, and any resulting seizure." *Id.* There is no warrant here to review yet, though, as the warrant under consideration specifies that "[t]he investigative team will not review the contents of the device(s) until further order of a court of competent jurisdiction." (Doc. 6-1 at 3.)

Moreover, prosecutors commonly form a "Filter Team" to review all documents, identify and separate documents subject to a privilege claim, and coordinate with opposing counsel on whether the material may be redacted or is subject to waiver or an exception to a privilege. *See, e.g.*, *In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, No. 20-03278-MJ, 2020 WL 6689045, at *2 (S.D. Fla. Nov. 2, 2020), *aff'd*, 11 F.4th 1235 (11th Cir. 2021) (gathering cases noting the use of a filter team). Eastman makes no argument that the Government will not provide for an appropriate review of privileged documents. The parties may further explore this issue in briefing on the motion for preliminary injunction. Because there is  no evidence that the Government has searched the phone or plans to search it without the benefit

of a Filter Team, and because the warrant specifies that no search of the phone will occur until further order of the court, Eastman fails to show a likelihood of success on his claim under the Sixth Amendment.

**B.      Irreparable Harm**

Eastman contends that "the deprivation of a constitutional right 'unquestionably constitutes irreparable injury.'" (Doc. 6 at 21 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).) He has not, however, shown a likelihood of success on the merits of his constitutional claims. Eastman cites *Harbor Healthcare System, L.P. v. United States*, 5 F.4th 593, 600 (5th Cir. 2021), for the proposition that the retention of privileged documents "constitutes an irreparable injury that can be cured only by Rule 41(g) relief." (*See* Doc. 6 at 21.) In *Harbor Healthcare*, "[t]he stipulated facts show that the government made no attempt to respect Harbor's right to attorney-client privilege in the initial search." 5 F. 4th at 599 (citations omitted). Even though the government employed a filter team, the government failed to destroy or return copies of documents the team identified and the government agreed were privileged. *Id.* The same cannot said to be true here.

Finally, Eastman argues once more that the "overly broad, 'general warrant' aspects of the seizure of 'all information' contained in [his] phone also presents an irreparable injury." (Doc. 6 at 22 (citations omitted).) Again, however, there is no evidence that the Government has secured a second warrant for the search of Eastman's phone. Presumably, that warrant will define with particularity the information for which the Government will search. At this time, Eastman has not shown that "immediate and irreparable injury, loss, or damage will result" without a TRO. *See* Fed. R. Civ. P. 65(b).

Because Eastman fails to show a likelihood of success or immediate irreparable harm, the Court will deny the motion for a TRO. The parties shall brief the remaining portions of Eastman's

motion (Doc. 6) as follows: The Government shall respond to the motion no later than **August 8, 2022**; and Eastman may file a reply brief no later than two weeks after the Government files a response brief. The Court will hold a hearing on the motion on **Tuesday, September 6, 2022, at 1:30p.m.**

### IV.    Conclusion

Although there is a possibility that Eastman may succeed on one of his constitutional claims, he fails to carry his burden to show the likelihood of success on the merits. Nor has he shown a clear and unequivocal right to relief from an immediate, irreparable harm. Consequently, the Court finds that the motion for TRO should be denied.

**THEREFORE,**

**IT IS ORDERED** that the Motion for a Temporary Restraining Order is **DENIED without prejudice**. In reaching the conclusions in this Opinion, the Court is relying to a considerable extent on the assertion in the warrant that the investigative team will not examine the contents of the phone until it seeks a second warrant. I will require the Government to provide notice to the Court, no later than **Wednesday, July 27, 2022,** on the location of the phone and information on whether the investigative team has applied for a second warrant. While the Court has not granted the TRO to maintain the status quo, the Court requires the Government to inform the Court of the status quo.

**IT IS FURTHER ORDERED** that Eastman shall serve the Amended Motion and this Opinion on the Government no later than **Wednesday, July 20, 2022**.

**IT IS FURTHER ORDERED** that the United States shall file a response to Eastman's motion no later than **Monday, August 8, 2022**; and Eastman may file a reply brief no later than

two weeks after the Government files a response brief.

**IT IS FURTHER ORDERED** that this matter will come before the Court for a hearing on **Tuesday, September 6, 2022, at 1:30p.m.** in the **Tortugas Courtroom, United States District Court for the District of New Mexico, 100 N. Church Street, Las Cruces, New Mexico, 88001.**

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE