**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| **JOHN EASTMAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | )        **No. CIV 22-mc-23 RB/KK** |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Defendant.** | ) |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S AMENDED MOTION FOR
RETURN OF SEIZED PROPERTY UNDER FED. R. CRIM. P. 41(g) AND REQUEST
FOR INJUNCTIVE AND OTHER RELIEF**

The movant, who has not been criminally charged in federal court, has filed a motion to suppress a search warrant that masquerades as a Rule 41(g) motion. Doc. No. 6 ("Mot."). The movant has not demonstrated irreparable injury and an inadequate remedy at law, and therefore has not shown the exceptional circumstances required to merit return of evidence or consideration of the legality of a warrant in the absence of a criminal case. Moreover, the relief he seeks—destruction of evidence obtained by the Government—contravenes both the language and purpose of Rule 41(g). The movant's alternative request, for the Court to enjoin the Government from searching his phone, fails to meet the heavy burden placed on him by this Circuit's caselaw. His motion, in all respects, should be denied.

## I.    BACKGROUND

On June 17, 2022, United States Magistrate Judge Laura Fashing authorized a warrant to search the movant's person and to seize any electronic or digital devices found upon the movant. Doc. No. 6-1. Before executing the warrant, agents learned that the movant had a permit authorizing him to carry a concealed weapon. *See* Exhibit 1. On June 22, federal agents executed the warrant and seized the movant's cell phone from a belt-holster. The movant appears to have

provided a video of a limited portion of the search in advance of a television interview on June 27, in which he solicited funds to assist in his legal defense.  *See* https://video.foxnews.com/v/630859 9997112#sp=show-clips (last visited Aug. 8, 2022).  Based on a review of the video, it appears that federal agents provided the movant with a copy of the warrant approximately 10 seconds after seizing the movant's cell phone.  *Id.*  The movant filed this motion the day of his interview, purportedly under Federal Rule of Criminal Procedure 41(g).  Doc. No. 1.  The motion did not contain a certificate of service.  *Id.*  On June 28, the court issued a summons to the Government.

On July 8, 2022, the movant filed the operative amended motion, which contained a request for a temporary restraining order.  Doc. No. 6.  On July 15, the Court denied the movant's motion for a temporary restraining order.  Doc. No. 8.  In its order, the Court concluded that the movant "has not established a likelihood of success on the merits of his constitutional claims or an unequivocal right to relief from an immediate, irreparable injury."  *Id.* at 3–4.  The Court also ordered the movant to serve the amended motion on the Government and ordered the Government to respond to the amended motion.  *Id.* at 11.

The movant served the amended motion on the Government by email on July 19, 2022. The Government now responds in opposition to the motion.

## II.   LEGAL STANDARDS

The movant's primary contention is that the Government should return his property pursuant to Federal Rule of Criminal Procedure 41(g), which provides:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return.  The motion must be filed in the district where the property was seized.  The court must receive evidence on any factual issue necessary to decide the motion.  If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

> Rule 41(g) protects legitimate interests in property while upholding the Government's

interests in retaining property needed for criminal investigations and prosecutions.  *See* Notes of Advisory Committee on Rules – 1989 Amendment.   According to the Advisory Committee Notes, "[n]o standard is set forth in the rule to govern the determination of whether property should be returned to a person aggrieved either by an unlawful seizure or by deprivation of the property," but "reasonableness under all of the circumstances must be the test when a person seeks to obtain the return of property."  *Id.*  Accordingly, "[i]f the United States has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable.  But, if the United States' legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable."  *Id.*  Significantly, "Rule 41([g]) is not intended to deny the United States the use of evidence permitted by the [F]ourth [A]mendment and federal statutes, even if the evidence might have been unlawfully seized."  *Id.*

The Tenth Circuit has analyzed a federal court's authority under Rule 41(g) as an equitable power to be used only in exceptional circumstances, repeatedly advising that a district court should exercise its equitable power to grant relief only if the Rule 41(g) movant shows "irreparable harm *and* an inadequate remedy at law."  *See, e.g., United States v. Shigemura*, 664 F.3d 310, 312 (10th Cir. 2011) (*quoting United States v. Copeman*, 458 F.3d 1070, 1071 (10th Cir. 2006)) (emphasis added).  More specifically, "a movant must demonstrate that being deprived of actual possession of the seized property causes 'irreparable injury,' and must be otherwise without adequate remedy at law."  *In re Search of Kitty's East*, 905 F.2d 1367, 1371 (10th Cir. 1990).  Under the law of this Circuit, "'Rule 41(g) jurisdiction should be exercised with caution and restraint,' and the district court should dismiss a Rule 41(g) motion if the movant has failed to make this showing."  *United States v. Bacon*, 900 F.3d 1234, 1237 (10th Cir. 2018) (*quoting Floyd v. United States*, 860 F.2d 999, 1003 (10th Cir. 1988)) (alterations omitted).

"[T]he mere threat of imminent indictment does not establish irreparable injury as required for a motion under Rule 41([g])." *In re Search of Premises Known as 6455 S. Yosemite, ("In re 6455 S. Yosemite")*, 897 F.2d 1549, 1557 (10th Cir. 1990). In part this is because, under the Rule, "[e]ven if the property is returned under Rule 41([g]), the government is not precluded from using such property in seeking an indictment against" a movant. *Id.* Instead, the Tenth Circuit to date has upheld irreparable injury in only two circumstances, neither of which is present in this case. First, irreparable injury may occur "because of an ongoing business need to recover original copies of the documents seized rather than a desire to avoid use by the government of such documents to seek an indictment against [him]." *Id.* Second, certain limited First Amendment injuries involving prior restraint may constitute irreparable injury under Rule 41(g). *See In re Search of Kitty's East*, 905 F.2d at 1371–72 (upholding district court's exercise of equitable power under Rule 41(g) in case involving seizure of purportedly obscene audio-visual materials because "a prior restraint must be reviewed on the motion of the party restrained at the earliest point compatible with sound judicial resolution" (quotation marks omitted)).

Solidifying that a movant can make out irreparable injury in only a narrow band of circumstances, the Tenth Circuit even has foreclosed the argument that "any deliberate violation of the [F]ourth [A]mendment is constitutionally irreparable" for Rule 41(g) purposes. *Floyd*, 860 F.2d at 1005. This comports with Rule 41(g)'s purpose of restoring property, not curing Fourth Amendment violations. "Instead, irreparable harm refers to circumstances in which a Rule 41([g]) movant cannot wait for a legal remedy, thus justifying the court's equitable jurisdiction" to order the return of property. *Id.* at 1006.

A Rule 41(g) action must be dismissed absent irreparable injury. Even where irreparable injury has been shown, however, "an adequate remedy at law . . . require[s] dismissal of [a] Rule

41([g]) motion." *Floyd*, 860 F.2d at 1005.  "Once a movant has been indicted, an adequate legal remedy is available in the district court with jurisdiction over the indictment and equitable jurisdiction is no longer necessary or proper." *In re Search of 6455 S. Yosemite*, 897 F.2d at 1556 n.6.  "A remedy may still be adequate, even if imperfect." *Copeman*, 458 F.3d at 1073.

The movant bears the burden of establishing under Rule 41(g) that "the retention of the property by the government is unreasonable." *United States v. Nelson*, 190 F. App'x 712, 714 (10th Cir. 2006) (*citing In re Search of Kitty's East*, 905 F.2d at 1375).  And courts routinely deny attempts to use Rule 41(g) for collateral purposes.  *See, e.g., United States v. Gray*, No. 11-20131-01-DDC, 2020 WL 7056096, at *2 (D. Kan. Dec. 2, 2020) ("[Defendant] cannot transform Rule 41(g) from a property recovery tool into a means to attack his conviction."); *In re Search of Kitty's East*, 905 F.2d at 1370 (noting "distinction between true motions for return of property and motions for suppression dressed as motions for return of property").

In the alternative, the movant seeks a preliminary injunction that would essentially freeze the Government's access to the materials on the movant's phone.  In denying the movant's request for a temporary restraining order, this Court set forth the heavy burden the movant must meet to obtain a preliminary injunction, Doc. No. 8 at 2–3, including the four factors the movant must establish:

> [The movant] must establish: "(1) a likelihood of success on the merits; (2) a likelihood that [he] will suffer irreparable harm if the injunction is not granted; (3) the balance of equities is in [his] favor; and (4) the preliminary injunction is in the public interest." *See Republican Party of N.M. v. King*, 741 F.3d 1089, 1092 (10th Cir. 2013) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)); Fed. R. Civ. P. 65.

## III.   ARGUMENT

### A.   The Court Should Dismiss the Movant's Rule 41(g) Motion Under its Equitable Powers or, in the Alternative, Deny the Motion on the Merits.

The movant has shown neither irreparable harm nor an inadequate remedy at law, and

therefore fails to establish either of the two conditions that must both be present before the Court may invoke its equitable power under Rule 41(g).  Moreover, the movant's purported Rule 41(g) arguments are without merit.  Accordingly, the motion should be dismissed or, alternatively, denied.

     **1.**    **The movant has not met his burden of establishing that this Court may exercise equitable jurisdiction.**

        *a.*    *The movant has not met his burden of establishing an irreparable injury.*

The movant claims irreparable injury on the grounds of his "constitutional claims" regarding the warrant's alleged facial invalidity, the attorney-client privilege, his "right to privacy," and the bare allegation that the seizing instrument was a "general warrant."  Mot. at 20–22.  Assuming for the purposes of argument that his allegations are meritorious (they are not), the Court nonetheless should dismiss the motion, because this Circuit's caselaw establishes that the listed harms do not count as an injury for Rule 41(g) purposes.  The Rule protects against irreparable harms stemming directly from lack of access to property, such as difficulty conducting legitimate business and time-relevant prior restraints on speech.  *See In re 6455 S. Yosemite*, 897 F.2d at 1557 (legitimate business need); *In re Search of Kitty's East*, 905 F.2d at 1371–72 (prior restraints on speech).  The movant's complaints regarding his constitutional rights and attorney-client privilege are not "irreparable injury" since they do not relate to his actual possession of the property.  *Cf. In re Search of Kitty's East*, 905 F.2d at 1371–72 (upholding exercise of equitable jurisdiction where government's possession of evidence could constitute prior restraint on speech).  Indeed, the movant's failure even to request copies of documents for interim use belies any showing of business injury or First Amendment prior restraints due to lack of access to the materials.  Rather, each of the harms claimed by movant may be protected by other means, such

as the Government obtaining a second warrant (which the Government has done, in the District of Columbia, *see* Doc. No. 13) or the filter protocol already put in place (and already known to the movant) by the terms of the second search warrant, *id*.

To the extent the movant's claims could serve as grounds for finding an irreparable injury, the movant has not actually been injured in any of the ways described, as further set forth below. Instead, the movant clearly seeks to prevent the Government from using any of the materials to seek an indictment against him, which definitively is not irreparable injury for purposes of Rule 41(g)'s equitable jurisdiction. *See In re 6455 S. Yosemite*, 897 F.2d at 1557. Tellingly, not a single case cited by the movant involves the granting of a Rule 41(g) motion on the ground of a Fourth Amendment violation; each case granting Fourth Amendment relief involved a motion to suppress evidence. *See generally* Mot. at 10–14 (citing cases). Rule 41(g) is not a substitute for a motion to suppress, nor a tool for vindicating purported constitutional violations or privacy interests, but rather protects interests in actual possession of property. Accordingly, the movant has shown no irreparable injury cognizable under the Rule.

        *b.*    *The movant has not met his burden of establishing an inadequate remedy at law.*

Nor does the movant succeed in showing an inadequate remedy at law. Critically, the "remedy" sought by the movant is not available under Rule 41(g), or even under the Fourth Amendment. According to the movant, "[t]he only solution is to return his device and all the information contained therein, as well as to order the destruction of any information that has already been retrieved or copied from the device." Mot. at 22. Besides showing the movant's true intent of preventing the Government from using evidence lawfully obtained pursuant to a search warrant authorized by Magistrate Judge Fashing and a second search warrant obtained in the District of Columbia, the movant's request goes beyond even suppression from use at trial to

encompass a complete purge of the documents from the Government's investigatory files.  Such an unprecedented purge would cause substantial detriment to the investigation, as well as seriously impede any grand jury's use of the seized material in a future charging decision.  The law does not support such action.  The Supreme Court has determined that the grand jury's need for available evidence outweighs the deterrent value of the exclusionary rule, which applies with equal force here.  *See United States v. Calandra*, 414 U.S. 338, 339, 354 (1974) (finding that "a witness summoned to appear and testify before a grand jury" may not "refuse to answer questions on the ground that they are based on evidence obtained from an unlawful search and seizure" and stating that "[i]n the context of a grand jury proceeding, we believe that the damage to that institution from the unprecedented extension of the exclusionary rule urged by respondent outweighs the benefit of any possible incremental deterrent effect").

Moreover, in general, the Fourth Amendment's exclusionary rule contains multiple exceptions to suppression that permit the Government's continued retention and use of materials, even when unlawfully obtained.  *See, e.g., United States v. Leon,* 468 U.S. 897 (1984) (good-faith exception); *United States v. Havens*, 446 U.S. 620 (1980) (impeachment exception); *Rakas v. Illinois*, 439 U.S. 128 (1978) (non-aggrieved party exception).  And Rule 41(g) specifically contemplates—even in cases where the movant, unlike here, actually has made the required showing for return of the property—the imposition of "reasonable conditions to protect [the Government's] access to the property and its use in later proceedings."  *See also In re 6455 S. Yosemite*, 897 F.2d at 1557 (noting that the Government may use property returned under Rule 41(g) in seeking an indictment).  This is so even where evidence is later determined to have been illegally seized.  Indeed, the Advisory Committee Notes to the 1989 amendments to Rule 41 explicitly state that the provision for return of evidence "is not intended to deny the United States

the use of evidence permitted by the [F]ourth [A]mendment and federal statutes, even if the evidence might have been illegally seized." Notes of Advisory Committee on Rules – 1989 Amendment (citing *Leon, Rakas,* and *Havens*). Rather "[t]he amended rule contemplates judicial action that will respect both possessory and law enforcement interests." *Id.* Movant has expressed no possessory interest in the seized property, but rather an interest in thwarting the government's investigation. Rule 41(g) is simply not a device for frustrating the Government's legitimate investigatory aims, and the movant must rely on other remedies at law should he further press his meritless claims of harm.

If anything, the movant's request is premature. Less than two months have passed since the Government seized the movant's property, and no charges have been made against him or anyone else based on the contents of the movant's cell phone. If he is ever charged with a criminal offense based on evidence derived from the search warrant, the movant will have a forum in which to challenge the warrant and request suppression of its evidence. Alternatively, should a criminal case against the movant or anyone else never be commenced, the Government likely would have no further interest in the physical phone, and it may be returned to the movant. *See United States v. Wilson*, 540 F.2d 1100, 1101 (D.C. Cir. 1976) (citing prior version of Rule 41(g) and holding movant may be entitled to return of property "which is not needed, or is no longer needed, as evidence" by the Government). At this pre-indictment stage, there is no legal basis to order return of evidence, let alone countenance the suppression of the fruits of the authorized search warrants. To do so would essentially negate two search warrants issued by duly-authorized courts of competent jurisdiction, without allowing the Government use of the evidence or any arguments regarding exceptions to any purported errors with the warrant.

**2.      Should the Court exercise its equitable powers to consider the movant's Rule 41(g) motion, the movant nevertheless fails on the merits.**

Since the movant has failed to establish the necessary conditions for this Court's exercise of its equitable powers to consider his Rule 41(g) motion, the motion should be dismissed on that ground alone.  Besides providing no basis for Rule 41(g) jurisdiction, the movant's arguments also fail to provide a basis for the extraordinary relief he seeks.  They should be rejected in their entirety, and the motion should be denied.

*a.      DOJ-OIG was empowered to obtain and execute the search warrant.*

Assuming that an agent from the U.S. Department of Justice's Office of Inspector General ("DOJ-OIG") obtained the warrant, the movant alleges that DOJ-OIG "has outstripped its mandate by targeting a person outside of the Department of Justice" and has "no jurisdiction" over the movant.  Mot. at 9–10.  As support, the movant cites 5 U.S.C. App. 3 § 8E(b)(4) for the proposition that DOJ-OIG has authority only to "investigate allegations of criminal wrongdoing or administrative misconduct by a person who is the head of any agency or component of the Department of Justice."  Citing no relevant caselaw, the movant suggests that such investigations cannot involve evidence obtained from a person outside the Department of Justice.  As a matter of common sense, he is incorrect: an investigation of wrongdoing by one individual routinely involves obtaining evidence from others, particularly in cases involving conspiracies.[1]

In any event, the movant's recitation of DOJ-OIG's jurisdiction is incomplete.  The

---

[1] The movant's argument, carried to its illogical conclusion, would mean that any DOJ employee could, for example, hide evidence or fruits of criminal conduct in the home of a non-DOJ employee without fear that DOJ-OIG could obtain a warrant to seize the material.  But warrants must be issued if there is probable cause to believe that the items to be seized will contain evidence of criminal conduct, and that issuance says nothing about whether the person from whom an item is seized is a subject or target of a criminal investigation.

applicable federal regulations specifically provide that DOJ-OIG has authority to investigate criminal wrongdoing that adversely affects the Department, wherever and among whomever it occurs. *See* 28 C.F.R. § 0.29a(b)(3) (DOJ-OIG "[i]nvestigates allegations that individuals and entities outside of the Department have engaged in activity that adversely affects the Department's programs and operations"). And such investigations contemplate, by statute, that DOJ-OIG agents may "seek and execute warrants for . . . search of a premises, or seizure of evidence issued under the authority of the United States upon probable cause to believe that a violation has been committed." 5 U.S.C. App. 3 § 6(f)(1)(C); *cf. United States v. Lustyik*, 57 F. Supp. 3d 213 (S.D.N.Y. 2014) (denying motion to suppress warrants, obtained by DOJ-OIG agent, for the email account, smartphone, and residence of Thaler, a non-DOJ employee); *United States v. Lustyik*, 2014 WL 1494019 (D. Utah. Apr. 16, 2014) (unpub.) (same). The movant's argument fails on its face, requires no further analysis, and must be rejected.

> b.   *The warrant is valid on its face.*

The movant asserts facial invalidity of the warrant under the Fourth Amendment on three grounds. He contends it lacks particularity because "the affidavit was not attached" to the warrant, the target offenses are not listed in the warrant, and the warrant is constitutionally overbroad because it allows seizure (but not review by the Government) of all information within the seized devices. Mot. at 10. The movant is wrong again.

> i.   *The warrant is sufficiently particular.*

The Fourth Amendment "specifies only two matters that must be 'particularly described' in the warrant: 'the place to be searched' and 'the persons or things to be seized.'" *United States v. Grubbs*, 547 U.S. 90, 97 (2006) (alterations omitted). A warrant is sufficiently particular when it "enables the searcher to reasonably ascertain and identify the things authorized to be seized."

*United States v. Sells*, 463 F.3d 1148, 1154 (10th Cir. 2006) (quotations omitted).  That is because "[t]he Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, *ex ante*, the deliberate, impartial judgment of a judicial officer between the citizen and the police, and by providing, *ex post*, a right to suppress evidence improperly obtained and a cause of action for damages."  *Grubbs*, 547 U.S. at 99 (quotations, citations, and alterations omitted).  This Circuit takes "a somewhat forgiving stance when faced with a 'particularity' challenge to a warrant authorizing the seizure of computers" given the characteristics of those electronic devices.  *United States v. Grimmett*, 439 F.3d 1263, 1269 (10th Cir. 2006).

The movant laments that the affidavit supporting probable cause "was not attached" to the warrant and claims this shows "an intent by the Government to prevent movant from developing his challenges to the warrant as an aggrieved party."  Mot. at 10–11.  The Government has no doubt that the movant would like to have full knowledge of the Government's investigation and the ability to "engage [federal agents] in a debate over the basis of the warrant."  But the law only, and properly, requires a neutral magistrate judge to find probable cause to search for and seize any electronic devices on his person; it does not require that the person searched know the basis for the warrant.  *See Grubbs*, 547 U.S. at 98 ("The Fourth Amendment does not require that the warrant set forth the magistrate's basis for finding probable cause, even though probable cause is the quintessential 'precondition to the valid exercise of executive power.'").  Here, the warrant incorporated by reference and physically attached the attachments to the warrant application that specified the items to be seized.  *See* Doc. No. 6-1.  Specifically, the warrant permitted the seizure of "[a]ny electronic or digital devices—including cell phones, USB devices, iPads, and computers identified in the affidavit—and all information in such devices."  *Id.*; *see also* Doc. No. 8 at 1.

- 12 -

    Case 1:22-mc-00023-RB-KK   Document 15   Filed 08/08/22   Page 13 of 24

Despite the actual language in the warrant attachment, the movant selectively chooses to base his argument on a misleading rendition that the warrant only "authorizes seizure of electronic devices 'identified in the affidavit.'" Mot. at 10. From this incomplete starting point, the movant claims that the affidavit was required to be appended to the warrant when served, in order to justify seizure of the movant's cell phone. But the warrant, in fact, authorized seizure of "**[a]ny** electronic or digital devices" at all, *see* Doc. No. 6-1 (emphasis added); the phrase specifying that the universe included the electronic devices "identified in the affidavit" is useful, but not constraining, surplusage. Because the Magistrate Judge authorized the seizure of any electronic device, it is non-sensical to suggest that the movant is entitled to know which smaller subset of electronic devices is specified in the warrant affidavit. Indeed, the Court already has so found. *See* Doc. No. 8 at 7 ("Again, the warrant here was more specific and allowed officers to seize only electronic and digital devices found on Eastman's person and the area within his immediate control. This was sufficiently specific and reasonably assured Eastman of the boundaries of the agents' power, whether the affidavit was attached or not."). The fact that further information regarding certain devices for which the Magistrate Judge found probable cause may exist in the affidavit does not render the warrant itself any less particular. Neither the cases cited by the movant nor the Fourth Amendment require the Government to provide him its evidence in support of probable cause at this stage of the investigation. Instead, under *Grubbs*, the materials provided were sufficient. *See* 547 U.S. at 92 (upholding warrant where the "attachments, but not the body of the affidavit, were incorporated into the requested warrant").[2]

---

[2] In a related argument, the movant complains "that the warrant provides no allegation that Movant owned, possessed, or had control over *any* electronic devices" and "gives no indication that evidence of any wrongdoing would be found on a cell phone or other electronic device." Mot. at 15. Again, such information relates to probable cause and need not be included in the warrant itself. *See Grubbs*, 547 U.S. at 97–99.

> ii.    *The warrant does not need to describe the target offenses.*

Largely rehashing arguments foreclosed by *Grubbs,* the movant also bemoans the warrant's failure to provide him information regarding the criminal offenses under investigation. Mot. at 14–15.  As the Court previously noted, the movant "does not cite any authority on point." Doc. No. 8 at 7.  Instead, the movant cites an inapposite case that stands for the proposition that the particularity requirement "ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause."  *United States v. Sterling*, No. CR 03-2566 JB, 2006 WL 8444153, at *9 (D.N.M. May 8, 2006).  But the movant's challenge is to a warrant authorizing the seizure—not search—of electronic evidence. In denying the movant's request for a temporary restraining order, this Court distinguished "searches" from "seizures" and observed that, "had the warrant here authorized the agents to seize only those electronics that were connected to a particular crime, then the agents would have arguably needed to search the electronics on site to verify that evidence of the crime was present." Doc. No. 8 at 7–8.  The caselaw does not impose such unworkable and impractical requirements. *Id.* at 8 ("As such a search would likely be impractical, the agents' procedure of obtaining one warrant for seizure, and a second, more particular warrant for search, appears to fall within the confines of the Fourth Amendment.").

> iii.    *The warrant is not overbroad.*

In a related argument, the movant claims that the warrant is overbroad.  In the movant's view, the warrant is an impermissible "general warrant," permitting "exploratory rummaging." Mot. at 12.  But a simple reading of the warrant's attachments, which were provided to the movant, elucidates the true nature of the initial warrant (the seizure of electronic devices), and what the movant wishes this Court had not identified when it denied the movant's request for a temporary

restraining order: the Magistrate Judge's search warrant contemplated a follow-on search warrant in a separate district—a warrant, obtained on July 12, 2022, from the U.S. District Court for the District of Columbia. Doc. No. 8 at 7 ("He ignores, though, the caveat that '[t]he investigative team will not review the contents of the device(s) until further order of a court of competent jurisdiction.").

The Tenth Circuit approved just such a procedure for seizing and searching electronic devices 25 years ago. *See Davis v. Gracey,* 111 F.3d 1472, 1480–81 (10th Cir. 1997). Noting that a computer can be both an "instrumentality" of a crime and a "container" storing evidence of a crime, the Tenth Circuit held:

> [W]e are well able to distinguish between the legality of the initial seizure of a container, and any subsequent search or retention of the contents. Even in the typical case, seizure of a container need not be supported by probable cause to believe that *all* of the contents of the container are contraband. The seizure of a container is not invalidated by the probability that some part of its "innocent" contents will be temporarily detained without independent probable cause. We will not hold unlawful the otherwise constitutional seizure of the computer equipment in order to prevent the temporary deprivation of plaintiffs' rights to the contents.

*Id.*[3]

The movant attempts to get around *Gracey* by citing *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005), which—as this Court already recognized in its ruling denying the movant's request for a temporary restraining order, *see* Doc. No. 8 at 7—further supports the position of the Government, not the movant. *Riccardi* stands for the proposition that "warrants for computer *searches* must affirmatively limit the *search* to evidence of specific federal crimes or

---

[3] The court went on to provide: "However, our conclusion that the seizure of the computer equipment pursuant to a warrant here allowed the incidental seizure of files stored therein should not be read as approval of any subsequent efforts by the police to search or retain the stored files without a warrant." *Id.* Here, the record is clear: the Government obtained a subsequent warrant and established a filter protocol. *See* Doc. No. 13.

specific types of material."  405 F.3d at 862 (emphasis added).  Thus, the movant again seeks to conflate the proper procedures for seizure of electronically stored information with those for searching such information.  The movant's efforts, unsupported by caselaw, should be rejected.

        *c.*      *No rule requires agents to serve warrants before executing them.*

The movant claims that his motion should be granted because the seizing agents did not serve him a copy of the warrant "at the outset" of the seizure.  In the movant's professorial view, he should have been provided a copy of the warrant prior to its execution, and then apparently given time (minutes? hours?) to read and analyze it so that he "would have been able to call the officer's attention to the several constitutional infirmities evident on the face of the warrant, thus preventing the unconstitutional seizure in the first place," Mot. at 17—all while agents stood in a parking lot, in an open-carry state, knowing that the movant was authorized to carry a concealed weapon.  Setting aside the practical absurdity of such a position, the movant admits that the law does not support his view.  Indeed, the movant begins his argument by noting that he cannot succeed: the Supreme Court already has confirmed that "neither the Fourth Amendment nor Rule 41 . . . requires the executing officer to serve the warrant on the owner before commencing the search."  Mot. at 15 (citing *Groh v. Ramirez*, 540 U.S. 551, 562 n.5 (2004)); *see also* Doc. No. 8 at 8 n.3.  And the movant notes that this Court rejected an identical argument in *United States v. Elliott*, 2015 WL 13667417, at *5 (D.N.M. Oct. 21, 2015) (citing *Grubbs*, 547 U.S. at 98).  But still, the movant soldiers on, relying on Ninth Circuit cases that set forth procedures that appear to be in question in even that Circuit and are not precedential here.  *Id.* at 15–16 & nn.1–2.

In sum, the movant seeks special treatment not required by statute, rule, or caselaw, and not accorded to others faced with federal search warrants.  Imagine federal law enforcement, constrained by such an imaginary rule, presenting warrants to each person at each location to be

searched, inviting a discourse on the "constitutional infirmities" in real-time of federal search warrants signed by duly-authorized and neutral magistrate judges that command law enforcement to execute the warrants.  *See* Doc. No. 6-1 ("To: Any authorized law enforcement officer . . . **YOU ARE COMMANDED** to execute this warrant . . . ." (emphasis in original)).  Just because the movant, or any person faced with a federal search warrant, disagrees with the basis for a warrant does not entitle the movant to *ex ante* discourse with an executing officer regarding the constitutional validity of the Magistrate Judge's issuance of the warrant.  The Supreme Court has said as much, both in *Grubbs*, 547 U.S. at 98–99, and *Groh*, 540 U.S. at 562 n.5, as has this Court, in *Elliott*.

Finally, to the extent such a rule existed, the agents waiting ten seconds after initiating the search to provide the movant with a copy of the warrant should be viewed as a ministerial failure, not one amounting to a Fourth Amendment violation.  *See Elliott*, 2015 WL 13667417, at *6.

> d.   *The Magistrate Judge's decision to permit agents to obtain the movant's biometric information did not violate the Fifth Amendment.*

The movant claims that the warrant impermissibly authorized agents to obtain his biometric information to unlock his cell phone, citing to a variety of non-precedential cases which involved denials by judges to issue warrants at all, or motions to suppress search warrants—not Rule 41(g) motions.  Mot. at 18.  The movant's argument is premised on his view that his face is testimonial, when an agent holds a phone up to it in order to unlock it.  Even if this were true, the Supreme Court has held that the fruits of Fifth Amendment violations are not suppressible, at least in situations—as here—that do not involve coercion.  *See United States v. Patane*, 542 U.S. 630 (2004); *see also United States v. Oloyede*, 933 F.3d 302, 308–10 (4th Cir. 2019) (relying on *Patane* to affirm denial of a motion to suppress the contents of the defendant's cell phone, where the

defendant entered her passcode into her cell phone at an agent's request, while in custody and without the benefit of *Miranda* warnings).

But even on the merits, the movant's argument fails. The obtaining of biometric information is more similar to "the government's compelled use of other 'physical characteristics' of criminal suspects that courts have found non-testimonial even when they are used for investigatory purposes rather than solely for identification," such as fingerprints, signatures, voice exemplars, handwriting exemplars, blood samples, photographing, measurements, and others. *Matter of Search of [Redacted] Washington, D.C.*, 317 F. Supp. 3d 523, 536 (D.D.C. 2018) (collecting cases). His face (observable by any passer-by at any time) does not "express the contents of his mind," and therefore is not testimonial. *Doe v. United States*, 487 U.S. 201, 210 n.9 (1988).

The movant attempts to establish that his face is testimonial because, in holding the phone up to his face, "the government forced movant to testify that (1) Movant recently used the phone; (2) Movant had some control over the contents of the phone; and (3) that Movant's control over the phone approached exclusivity." Mot. at 18.[4] But given *Patane*, any remedy at best would be suppression of the three "testimonial" items movant specifies, not the contents of the phone. And in any future trial, the Government would not need the allegedly "testimonial" information to prove the defendant's dominion over the cell phone given that the phone was on the movant's person, attached to his belt, as shown on video the movant endorsed in a television interview.

More globally, the movant's argument neatly encapsulates why the proper vehicle for such

---

[4] Contrary to the movant's argument, the warrant did not authorize agents to "force[ ] movant to unlock the seized phone," Mot. at 18; rather, the warrant permitted them to obtain a physical characteristic of the movant using their independent knowledge as to what characteristic would be relevant for accessing the seized device.

an argument is a motion to suppress after any criminal charge against him is levied, not in a Rule 41(g) motion.  If the Court were to rule in the movant's favor now, it essentially would sweep away the Government's ability to make arguments later that the good-faith exception applies to the seizing agents' conduct, because Magistrate Judge Fashing authorized them to obtain the movant's biometric information and no precedent in this Circuit is to the contrary of the Magistrate Judge's decision.  The motion should be denied.

> e.      *The movant's other challenges fail.*

Finally, the movant asserts that the warrant violates his First Amendment rights, the attorney-client and work-product privileges, and his privacy interests.  Mot. at 18–20.  As support for this anthology of arguments, the movant primarily relies upon civil litigation over the movant's emails—not the entire contents of his cell phone—in *Eastman v. Thompson*, No. 8:22-CV-00099 DOC/DFM (C.D. Cal.).  As this Court has already noted, that case simply does not stand for what movant suggests.  Doc. No. 8 at 4–5.  The movant's rights and privileges do not eliminate the Government's ability to seize and search his phone in furtherance of a criminal investigation.

As a preliminary matter, the movant erroneously suggests that the Government has breached attorney-client privilege simply by seizing the information authorized by the search warrant.  Mot. at 18–19.  That is incorrect.  As set forth in *Gracey*, the Government may seize information from a container pursuant to one warrant before searching the information for responsive materials pursuant to a second warrant.

Moreover, the Government's investigatory interests in seizing and searching an electronic device (within the bounds of the Fourth Amendment) are not vitiated by the movant's right to free association.  *See, e.g., Reps. Comm. for Freedom of Press v. Am. Tel. & Tel. Co.*, 593 F.2d 1030, 1051 (D.C. Cir. 1978) ("The broad scope of acceptable government investigation, so necessary to

the secure enjoyment of All liberties, unavoidably places a burden on All citizens."). Indeed, "[t]he [F]irst [A]mendment does not protect against investigation of suspected criminal activity." *Pleasant v. Lovell*, 876 F.2d 787, 803 (10th Cir. 1989). Rather, First Amendment rights are "[s]ubject to the general and incidental burdens that arise from good faith enforcement of otherwise valid criminal and civil laws that are not themselves solely directed at curtailing the free flow of information." *Reps. Comm. for Freedom of Pres*, 593 F.2d at 1051. This is true even where substantial First Amendment activity is implicated by a warrant, as in a search of a newspaper's offices. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 565 (1978). "Properly administered, the preconditions for a warrant—probable cause, specificity with respect to the place to be searched and the things to be seized, and overall reasonableness—should afford sufficient protection against the harms that are assertedly threatened by warrants for searching newspaper offices." *Id.*; *see Gordon v. Warren Consol. Bd. of Educ.*, 706 F.2d 778, 781 n.3 (6th Cir. 1983) ("[P]hysical surveillance consistent with Fourth Amendment protections in connection with a good faith law enforcement investigation does not violate First Amendment rights, even though it may be directed at communicative or associative activities."). In this case, the subject of the search is not a newspaper office, but a private citizen's cellular telephone. The Government's seizure was limited by the terms of the warrant, and the search is limited by the terms of the second warrant obtained in the District of Columbia. There is nothing unique about the First Amendment rights at play nor troubling about the application of the Fourth Amendment in this matter.

Likewise, the Government already has taken steps to protect the attorney-client and work-product privileges that may be implicated by virtue of the Government having obtained the movant's phone with the first search warrant. In connection with the second warrant, a court of competent jurisdiction approved a filter protocol to adequately protect privileged information

within the seized device.  *See* Doc. No. 13.  That protocol has been provided to movant's counsel, and he has not challenged the protocol in any action in the District of Columbia.  *Id.*  Notably, because the warrant in this matter involves only the seizure of an electronic device and the information therein, and not a search of said device, it does not present a live case or controversy in this District regarding protection of any privileges implicated by a search.  In any event, the Tenth Circuit has implicitly approved the use of government filter teams to protect privilege interests in seized materials.  *See United States v. Ary*, 518 F.3d 775, 780 (10th Cir. 2008).

**B.       The Court Should Deny the Movant's Request for a Preliminary Injunction.**

As an alternative form of relief "[i]f this Court is not prepared to order the government to return Movant's property," the movant requests a preliminary injunction "preventing the government from searching the phone until an appropriate procedure is in place to protect important privileged information as well as to prevent an indiscrim[in]ate rummaging through Movant's other papers and communications that are not 'particularly described' in the warrant." Mot. at 23–24.  The movant's request is moot, since a court-ordered filter protocol is already in place by virtue of the second search warrant obtained in the District of Columbia (as specifically contemplated in the first warrant).  Doc. No. 13.  Even were the argument not moot, the movant is not entitled to the relief he seeks.

**1.       The movant's preliminary injunction request is moot.**

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010) (quotation marks and citations omitted).  When considering mootness, the Tenth Circuit asks "whether granting a *present* determination of the issues offered will have some effect in the real world."  *Id.* at 1110.  A request for injunctive relief

may be moot even while other live issues remain in a case.  *See Fleming v. Gutierrez,* 785 F.3d 442, 446 (10th Cir. 2015) (discussing 13C Charles Alan Wright et al., Federal Practice and Procedure § 3553.3.1 (3d ed. 2008)).  Here, the movant has already received the relief for which he seeks a preliminary injunction—an "appropriate procedure" for filtering privileged communications and searching the phone seized in this District.  Doc. No. 13.  Any challenge to the search of the phone and accompanying procedures would lie in the District of Columbia. Accordingly, the request is moot, and this Court has no further jurisdiction as to that issue.[5]

> **2.     Even if this Court had jurisdiction over the request for a preliminary injunction, the movant fails to meet the heavy burden for that extraordinary remedy.**

To obtain a preliminary injunction, a movant must establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) the balance of equities is in favor of the relief, and (4) the relief is in the public interest.  Doc. No. 8 at 2–3.  The movant has established none of these factors.

As to the first factor of the test, the movant claims a likelihood of success on the merits of his constitutional and attorney-client privilege claims.  Mot. at 24–26.  As has been demonstrated above in Section A, the movant is entitled neither to the exercise of this Court's equitable powers under Rule 41(g) nor to substantive relief on any of his claims.[6]  As to the second factor, the movant again relies upon purported violations of his constitutional rights and attorney-client privilege, arguing that "[a]llowing government agents unrestricted access to the privileged materials on Movant's phone would clearly constitute irreparable harm."  Mot. at 26–27.  As has

---

[5] In connection with his preliminary injunction request, the movant states that "any search of the phone would be unconstitutional."  Mot. at 24.  This assertion is puzzling given that the movant's request for relief contemplates an "appropriate procedure" for searching the phone.  Mot. at 23.

[6] Moreover, any objections to the Government's filter protocols must now be lodged in the District of Columbia.

been demonstrated above, the Government has never asked for nor received "unrestricted access" to "privileged materials on Movant's phone."   As to the third prong, the movant argues that "whatever valid investigative interest there may be in a DOJ/OIG investigation of John Eastman is easily outweighed by the harm an unrestricted cell phone search would cause."  Mot. at 28. Again, no "unrestricted cell phone search" exists in this matter, and the Government's investigatory interests are valid and may displace the movant's incidental privacy and First Amendment rights, no differently than for many others subject to federal search warrants.  Finally, as to the fourth factor, the movant contends a preliminary injunction favors "not only the interests of Movant's clients but the broader public's interest in upholding attorney-client privilege," as well as "the public interest not to allow unconstitutional law enforcement searches."  Mot. at 28. But the movant has shown neither a breach of attorney-client privilege nor an unconstitutional search.  To the contrary, the public's interest lies in allowing the Government's investigation to proceed without the unprincipled and unfounded interference of the movant.

Because the movant has failed to carry his burden on any of the four factors relevant to preliminary injunction determinations, his request must be denied.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Government requests that the Court deny the motion in its entirety.  The movant has not demonstrated irreparable injury and an inadequate remedy at law sufficient to merit consideration of his attack on the legality of the warrant or return of evidence seized.  And since he also has failed on the merits, the movant cannot meet his heavy burden of establishing a right to a preliminary injunction.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

for the District of Columbia

By:  */s/ Thomas P. Windom Aug. 8, 2022*
     */s/ Mary L. Dohrmann Aug. 8, 2022*
     Thomas P. Windom
     Mary L. Dohrmann
     Assistant United States Attorneys
     601 D Street, N.W.
     Washington, D.C.  20530
     Office: 202-252-1900


     ALEXANDER M.M. UBALLEZ
     United States Attorney
     for the District of New Mexico

     */s/ Roberto D. Ortega August 8, 2022*
     ROBERTO D. ORTEGA
     Assistant United States Attorney
     P.O. Box 607
     Albuquerque, New Mexico 87103
     (505) 224-1519 Fax: (505) 346-7205
     roberto.ortega@usdoj.gov


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 8, 2022, I filed the foregoing pleading electronically through the CM/ECF system, which caused the following party or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Charles Burnham: charles@burnhamgorokhov.com
Joseph Gribble: jjg@crowleygribble.com

                    */s/ Mary L. Dohrmann, 8/8/22*
                    Mary L. Dohrmann
                    Assistant United States Attorney