**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW MEXICO**

Albuquerque Division

| | | |
|---|---|---|
| **JOHN EASTMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:22-mc-00023-RB** |
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant,** | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR RETURN OF SEIZED
PROPERTY UNDER FED. R. CRIM. P. 41(g)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................3

INTRODUCTION ........................................................................................................6

ARGUMENT ...............................................................................................................6

I.     DOJ's Office of Inspector General Has No Jurisdiction. .....................................6

   A.  This Court Should Require a Factual Proffer from the Government Before Accepting its
       Unprecedented Claim of DOJ IG Investigative Authority .........................................6

   B.  The Government Has Not Established Statutory Authority for its Claimed Scope of Section
       29a.    8

II.    The Authorization To Seize Electronic Devices Either Lacks The Requisite Particular
       Description Or Is Overbroad ...........................................................................9

   A.  The warrant incorporates the affidavit by reference.............................................9

   B.  In the alternative, the warrant is overbroad. .....................................................11

III.   The Warrant's Authorization To Seize "All Information In Such Devices" Is Likewise
       Unconstitutionally Overbroad. ......................................................................12

IV.    Whether Compulsory Provision of Biometric Data Violates the Fifth Amendment Is An
       Open Issue in the Courts................................................................................17

V.     The Identification of Specific Crimes For Which There Has Been A Probable Cause
       Finding Is Necessary At Least Where, As Here, the Warrant Authorized A Broad Seizure
       of "All Information." ...................................................................................18

VI.    The Government's Actions Will Cause Irreparable Harm For Which There Is No Adequate
       Remedy....................................................................................................20

VII.   Movant Has Met the Standards for a Preliminary Injunction.............................22

VIII.  Movant's Property Should Be Returned Because The Government Has No Ongoing Need
       to Retain It. .............................................................................................27

CONCLUSION .........................................................................................................28

# TABLE OF AUTHORITIES

**Cases**

*Coolidge v. New Hampshire,*
  403 U.S. 443 (1971)..............................................................................12, 15, 21

*Davis v. Gracey,*
  111 F.3d 1472 (10th Cir. 1997) .....................................................12, 13, 14, 27

*Elrod v. Burns,*
  427 U.S. 347 (1976)........................................................................................26

*Floyd v. United States,*
  860 F.2d 999 (10th Cir. 1988) .......................................................................20

*In re Grand Jury Proceedings,*
  115 F.3d 1240 (5th Cir. 1997) .......................................................................22

*In re Search of 6455 S. Yosemite,*
  897 F.2d 1549 (10th Cir. 1990) .....................................................................21

*In re Search Warrant Issued June 13, 2019,*
  942 F.3d 159 (4th Cir. 2019) ..........................................................23, 24, 25, 26

*Int'l Multifoods Corp. v. Commercial Union Ins. Co.,*
  309 F.3d 76 (2d Cir. 2002) ............................................................................10

*Matter of 636 South 66th Terrace, Kansas City, Kan.,*
  835 F.Supp. 1304 (D. Kan. 1993)..................................................................26

*Matter of Search of Kitty's E.,*
  905 F.2d 1367 (10th Cir. 1990) .......................................................14, 20, 21, 27

*Nelson v. United States,*
  40 F.4th 1105 (10th Cir. 2022) ......................................................................10

*Schmerber v. California,*
  384 U.S. 757 (1966)........................................................................................18

*U.S. v. Garcia,*
  65 F.3d 17 (4th Cir. 1995) .............................................................................22

*U.S. v. Mills,*
  991 F.2d 609 (9th Cir. 1993) .........................................................................28

*United States v. Campos,*
  221 F.3d 1143 (10th Cir. 2000) .....................................................................20

*United States v. Cano,*
  222 F.Supp.3d 876 (S.D. Cal. 2016)..............................................................27

*United States v. Clymore,*
   245 F.3d 1195 (10th Cir. 2001) ...........................................................28

*United States v. Copeman,*
   458 F.3d 1070 (10th Cir. 2006) ...........................................................22

*United States v. Fuccillo,*
   808 F.2d 173 (1st Cir.) .......................................................................13

*United States v. Galpin,*
   720 F.3d 436 (2d Cir.2013) .................................................................19

*United States v. Griffith,*
   867 F.3d 1265 (D.C. Cir. 2017) ...........................................................11

*United States v. Kow,*
   58 F.3d 423 (9th Cir.1995) ..................................................................13

*United States v. Lamport,*
   787 F.2d 474 (10th Cir. 1986) .............................................................19

*United States v. Oloyede,*
   933 F.3d 302 (4th Cir. 2019) ...............................................................17

*United States v. Patane,*
   542 U.S. 630 (2004)............................................................................17

*United States v. Premises Known as 608 Taylor Ave.,*
   584 F.2d 1297 (3d Cir.1978) ...............................................................27

*United States v. Riccardi,*
   405 F.3d 852 (10th Cir. 2005) ........................................................12, 20

*United States v. Rosa,*
   626 F.3d 56 (2d Cir. 2010) ..................................................................19

*United States v. Sells,*
   463 F.3d 1148 (10th Cir. 2006) ...........................................................21

*United States v. Shigemura,*
   664 F.3d 310 (10th Cir. 2011) .............................................................28

*United States v. Sterling,*
   No. CR 03-2566 JB, 2006 WL 8444153 (D.N.M. May 8, 2006) ...........18

*United States v. Ulbricht,*
   858 F.3d 71 (2d Cir. 2017) ..................................................................19

*United States v. Walser,*
   275 F.3d 981 (10th Cir.2001) ..............................................................20

*United States v. Yung,*
   103 F.3d 145 (10th Cir. 1996) .............................................................28

4

*Voss v. Bergsgaard*,
    774 F.2d 402 (10th Cir. 1985) ...............................................................13, 15, 18, 19

*West Virginia v. Environmental Protection Agency*,
    142 S.Ct. 2587 (2022) ...............................................................................................9

*Wong Sun v. United States*,
    371 U.S. 471 (1963) .........................................................................................18, 21

**Statutes**

18 U.S.C. § 371 ..................................................................................................................19

5 U.S.C. APP. 3 § 2 ............................................................................................................8

5 U.S.C. APP. 3 § 4 ............................................................................................................8


**Other Authorities**

2 W. La Fave, *Search and Seizure*, § 4.6(a) (4th ed.2004) .........................................21

63 Fed Reg 36846 (1998) ..................................................................................................7

Fed. R. Crim. P. 41 Notes of Advisory Committee on Rules – 2009 Amendment ......................16

Fed. R. Crim. P. 41 Notes of Advisory Committee on Rules – 2016 Amendment ......................16

Fed. R. Crim. P. 41, Notes of Advisory Committee on Rules – 1972 Amendment .....................18

Fed. R. Crim. P. 41, Notes of Advisory Committee on Rules – 1989 Amendment............6, 27, 28

Tim Prudente and Justin Fenton, *Feds criticized after acquittals in Ken Ravenell conspiracy
    trial; jury convicts on one count of money laundering*, Baltimore Sun (Dec. 28, 2021)..........23


**Rules**

Fed. R. Crim. P. 41(f)(1)(C) ............................................................................................16

Fed. R. Crim. P. 41(g) ...........................................................................................1, 17, 20, 27


**Constitutional Provisions**

U.S. Const. amend. IV ..............................................................................................passim

U.S. Const. amend. V ...............................................................................................17, 18

# INTRODUCTION

A Rule 41(g) motion for return of property may be brought by a person "aggrieved" *either* "by an unlawful search and seizure of property *or* by the deprivation of property."  Fed. R. Crim. P. 41(g).  The government ignores the first clause and centers its response entirely on the second. Movant has not asserted that he is aggrieved by the deprivation of his property (although the loss of his phone, critical for the conduct of his business as an attorney, has necessitated that he purchase a replacement at significant expense); rather, he has asserted that he has been aggrieved by the unlawful search and seizure itself, because of, *inter alia*, significant violations of the Fourth Amendment, including the lack of a particular description of the items to be seized and an overly broad authorization to seize "any" electronic equipment and "all information" contained therein.

Finally, even if this Court is not prepared to order both return of the phone and destruction of "all" the information seized pursuant to an unconstitutional general warrant, return of the phone and the information is nevertheless required unless the Government can demonstrate a continuing need to retain the phone and its information.  "[I]f the United States' legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable." *Id.*, Fed. R. Crim. P. 41, Notes of Advisory Committee on Rules – 1989 Amendment. The Government has offered no argument whatsoever why, after more than two months, it could not return the phone itself, or why it could not simply retain a copy of whatever information it could lawfully have searched and seized based upon a judicial finding of probable cause.

# ARGUMENT

## I.     DOJ's Office of Inspector General Has No Jurisdiction.

### A.     This Court Should Require a Factual Proffer from the Government Before Accepting its Unprecedented Claim of DOJ IG Investigative Authority

In his original motion, Movant made the straightforward argument that the Department of Justice Inspector General's Office has no jurisdiction over him because he is not a current or former employee of the Department of Justice.  ECF 6 at 9.

In response, the government has not disputed this assertion or claimed that Movant engaged in some misconduct involving DOJ personnel that would give the IG grounds to investigate him.  Instead the government claims the DOJ IG has authority to investigate movant based on a little known provision of the Code of Federal Regulations purporting to grant the IG authority to "investigate[] … activity that adversely affects the Department's programs and operations."  Resp. at 10-11(*citing* 28 C.F.R. § 0.29a(b)(3)).  What the Government fails to acknowledge is that the provision "was not published for public comment because it pertains to a matter of internal Department management."  63 Fed Reg 36846 (1998).  Indeed, the Attorney General expressly "certifie[d] that this rule … does not have an effect beyond the internal operating procedures of the Department or the OIG" and that it "is not considered to be a rule within the meaning of section 3(d) of Executive Order 12866."  *Id.*

Moreover, to Movant's knowledge, this provision has never been construed by any federal court and the government has cited no case which does so.  Were this Rule even applicable other than as internal operating procedure, *see id.*, an important question of first impression would therefore before this Court: can the DOJ Inspector General's office investigate any American whose activities, in the IG's subjective view, "adversely affect[]" the DOJ?

Before becoming the first court to construe this regulation, this Court should expect the government to articulate some limiting principle for its scope.  For example, by its own terms § 0.29a(b)(3) is not limited to criminal, unethical or tortious conduct.  Is the government claiming IG authority to investigate (for example) members of the defense bar challenging DOJ

prosecutions or public interest organizations educating citizens about their right to refuse law enforcement searches and interrogations?  Such conduct could certainly "adversely" affect DOJ operations by making it more costly and challenging to investigate and prosecute targets.  Under the government's theory of IG authority, there is no reason why these would not be legitimate areas of investigation.

Movant submits that before giving judicial blessing to such an unprecedented power grab, this Court would be prudent in requesting a proffer from the Government of how it alleges that Movant's activities adversely affected the Department of Justice.  This Court should also demand some limiting principle for the vast investigative authority the government is now claiming pursuant to this heretofore obscure regulation.

**B.     The Government Has Not Established Statutory Authority for its Claimed Scope of Section 29a.**

Even if 28 C.F.R. § 0.29a(b)(3) were more than simply an internal operating procedure, such a breathtaking claim of power as the government makes in reliance on it finds no support in statutory law.

The Inspector General Act grants the Inspector General authority to conduct audits of the department, review legislation, recommend policies (especially for prevention of fraud in programs administered by the department), and to keep the head of the department and Congress informed regarding "fraud and other serious problems, abuses and deficiencies relating to the administration of programs and operations administered" by the department.  5 U.S.C. APP. 3 §§ 2, 4.  This authority is inward looking – it allows the Inspector General to monitor programs and employees of the department.  Yet in this case, the government argues that it has authority to use a vaguely worded regulation purportedly implementing this statute to investigate private citizens who are not part of the Department and who do no business with the Department.  This claim of

sweeping authority to investigate any private citizen that the Inspector General determines is "adversely" affecting "the Department's programs and operations," whatever that might mean, is staggering in its reach.

The government's claim to discover such an "unheralded power" representing a "transformative expansion in [its] regulatory authority" requires this Court to examine the claimed power under the "major questions" doctrine. *See West Virginia v. Environmental Protection Agency*, 142 S.Ct. 2587, 2610 (2022). As noted above, the provisions of the Inspector General Act are inward looking; they grant authority to conduct audits, ferret out fraud and illegal behavior by employees and by those participating in Department programs. A claim that Congress also empowered Inspectors General to investigate private citizens for anything that that the Inspector General decides "adversely affects" the department should cause this Court "to hesitate before concluding Congress meant to confer" such sweeping power of the Office of Inspector General. *Id*.

The government offers no legal precedent and no statutory authority for its position, only a vaguely worded regulation unmoored from the power granted by Congress. There is simply no basis for the government's claim to this new unheralded power for Inspectors General to investigate private citizens.

## II.    The Authorization To Seize Electronic Devices Either Lacks The Requisite Particular Description Or Is Overbroad

### A.    The warrant incorporates the affidavit by reference

Movant has argued that the search warrant did not specify the electronic devices to be seized because it purported to make such specification by incorporating the affidavit but a copy the affidavit was not attached. ECF 6 at 10-11. The warrant authorizes agents to seize "any electronic or digital devices – including cell phones, USB devices, iPads and computers

identified in the affidavit – and all information in such devices." Ex. 1 to original motion at 3 (warrant attachment B-1). Without the affidavit being attached to the warrant, Movant has argued, the warrant does not satisfy the constitutional requirement to "particularly describe[e]" the things to be seized. ECF 6 at 11.

The government responds that the warrant's reference to devices described in the affidavit is "surplusage" and that therefore the agents did not need to include the affidavit with the warrant to meet the specificity requirement. Resp. at 13. Essentially, the government argues that warrant's reference to the affidavit was excess verbiage, injected by the issuing court for no purpose. This argument ignores one of the most basic canons of interpretation. The "rule against surplusage" requires a reviewing court to avoid legal constructions that render some words altogether redundant. *See*, *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002) (collecting cases); *Nelson v. United States*, 40 F.4th 1105, 1115 (10th Cir. 2022) ("[T]he rule against surplusage…encourages courts to give meaning to every word used in a statute").

Applying the rule against surplusage here, this Court should conclude that the issuing court intended the warrant's reference to devices described in the affidavit to have some meaning. What was that meaning? Movant submits that the issuing court simply meant for the warrant to incorporate the bedrock constitutional requirement that government agents could only seize devices for which the affidavit demonstrated probable cause to believe contained evidence of crime. That this was the issuing court's intent is obvious not only from the plain language of the warrant but also, as explained in the next section, because any other reading renders the warrant unconstitutionally overbroad.

**B.      In the alternative, the warrant is overbroad.**

If this Court accepts the government's contention that the warrant's reference to devices described in the affidavit is surplusage, the warrant would be invalid on the alternate ground that the remaining authority to seize "[a]ny electronic devices" is clearly overbroad. *United States v. Griffith*, 867 F.3d 1265, 1276 (D.C. Cir. 2017) (warrant for "all cellphones and electronic devices" overbroad where warrant only established probable cause for devices owned by defendant or linked to offense").

Even without the benefit of the affidavit, this Court can easily conclude that a warrant for "any electronic devices" is overbroad.  Such a warrant would allow seizure of hearings aids, a digital watch, a newly purchased iPhone still in shrink-wrap, or, as here, a phone that movant did not even purchase until August 2021—8 months or more after the time period that is presumably the focus of any pending investigation by the Department of Justice that could conceivable be related to Movant.  Such items would be manifestly unrelated to any conceivable government investigation, but the government's reading of the warrant would apply to them.  This Court should therefore conclude that, under the government's interpretation, the search warrant in question is unconstitutionally overbroad.

If the government stands by its extraordinary claim that it has developed probable cause to seize *any* electronic device possessed by Movant (including hearings aids or a wristwatch or a phone he did not even own at the presumed relevant time period), this Court would be well justified in ordering the government to produce its affidavit[1] to Movant and the Court to allow proper argument on this issue.

---

[1] Movant would consent to a reasonable protective order for the affidavit if the government requests.

III.    **The Warrant's Authorization To Seize "All Information In Such Devices" Is Likewise Unconstitutionally Overbroad.**

Movant contended in his opening brief that the warrant's authorization to "seize" "all information" in the seized electronic devices was so overbroad as to amount to a general warrant, the very thing the Fourth Amendment was adopted to prohibit.  ECF 6 at 11-14 (citing, *inter alia*, *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) (Stewart, J., plurality)); *see also* U.S. Const. amend. IV (requirement that items be "particularly describe[ed]" applies as much to items "seized" as items "searched").  The government's response notes this Court's prior ruling correctly acknowledging the impracticality of an on-site search of a modern smart phone for relevant information, but it overlooked case law from this Circuit requiring that even in such circumstances, the government is obligated to provide as much information as is available to it.

The Tenth Circuit's decision in *United States v. Riccardi*, 405 F.3d 852 (10th Cir. 2005), is instructive.  The search warrant there, like the search warrant here, "was not limited to any particular files, or to any particular federal crime."  *Id.* at 862.  It "authorized the '*seizure*' of Mr. Riccardi's computer and all electronic and magnetic media stored therein."  *Id.* (emphasis added).  The additional authorization that officers could further search the "container"—i.e., the computer—for the electronic files contained on it and to "hold and seize such items to be dealt with according to law" allowed for a general search, contrary to the commands of the Fourth Amendment.  The *only* restriction on the subsequent search of "all information" seized from Movant that the Government has thus far offered is a filter for privileged materials.  Beyond that, there is nothing in the record to counter the breadth of the authorization to "seize" "all information" and to then search it.

The Tenth Circuit's decision in *Davis v. Gracey*, 111 F.3d 1472 (10th Cir. 1997), is also instructive.  Addressing a "seizure" (not a subsequent search of seized information), the Court

noted that it has "invalidated warrants for overbreadth where the language of the warrants authorized the *seizure* of 'virtually every document that one might expect to find in a ... company's office,' including those with no connection to the criminal activity providing the probable cause for the search." *Id.* at 1479 (emphasis added, quoting *U.S. v. Leary,* 846 F.2d 592, 602 (10th Cir. 1988), and citing *Voss v. Bergsgaard*, 774 F.2d 402, 405 (10th Cir. 1985)). It expressly included "computer file[s]" – such as those on Movant's phone at issue here – by noting that, "[s]imilarly, the Ninth Circuit found insufficiently particular a warrant which 'authorized the *seizure* of virtually every document and *computer file*" at the target company." *Id.* (emphasis added, quoting *United States v. Kow,* 58 F.3d 423, 427 (9th Cir.1995)). The Tenth Circuit then indicated further agreement with the Ninth Circuit's decision in *Kow*, noting that "[t]he court emphasized that the warrant 'contained no limitations on which documents within each category could be seized or suggested how they related to specific criminal activity.'" *Davis*, 111 F.3d at 1479 (quoting *Kow*, 58 F.3d at 427).

*United States v. Leary* likewise held that "the fourth amendment requires that the government describe the items to be *seized* with as much specificity as the government's knowledge and circumstances allow, and 'warrants are conclusively invalidated by their substantial failure to specify as nearly as possible the distinguishing characteristics of the goods to be seized.'" 846 F.2d at 600 (quoting *United States v. Fuccillo*, 808 F.2d 173, 176 (1st Cir.)).

Despite the logistical difficulties of an on-site separation of information for which there was a finding of probable cause, on the one hand, and "innocent" information, on the other, *see Davis*, 111 F.3d at 1480, the government easily could have, and under *Davis* and *Leary* should have, identified in the warrant specific limitations on the information to be seized and subsequently searched.  Although Movant to this day does not know the probable cause basis for the search and

13

seizure of any of his communications because the government did not provide that information in the initial warrant, has not provided that information in a supporting affidavit, and has not provided to Movant any subsequent search-of-content warrant or affidavit, he can surmise that the investigation, which is apparently being conducted by the Office of the Inspector General at the Department of Justice, involves potential communications Movant might have had with employees of the Department of Justice during a particular time period.   "Particularly describing" such individuals and the relevant time period was certainly feasible, and accordingly such particularity was required by the Fourth Amendment at the time of the initial seizure, even if, given the logistical constraints on seizures and searches of electronic files, "innocent" files might also be seized.  *See, e.g., Davis*, 111 F.3d at 1478 (Moreover, "[e]ven a warrant that describes the items to be seized in broad or generic terms may be valid 'when the description is as specific as the circumstances and the nature of the activity under investigation permit.'" (internal citations omitted)); *see also Matter of Search of Kitty's E.*, 905 F.2d 1367, 1375 (10th Cir. 1990) ("in *Leary* we suggested that further restrictions on the scope of the search—such as a date restriction or a restriction based on references to specified companies allegedly involved in the criminal activity or a restriction based on a certain product or transaction—might have rendered the warrant sufficiently particular to be constitutional.")

The crux of the Government's argument to the contrary is that the unlimited authorization to "seize" all information contained in the initial warrant approved by the magistrate in *this* court did not violate the Fourth Amendment's particularity requirement or the ban on general warrants because the initial warrant did not further authorize a "search" of all that information.  For that, a second warrant would be required from some *other* court (and, apparently, has been obtained,

though the terms of it remain unknown to Movant beyond an inadequate taint team procedure).[2] Even assuming that the Office of Inspector General even has jurisdiction to search and seize property and communications of citizens having no connection with the Department of Justice (it does not), there are several constitutional and procedural flaws with the Government's relatively novel application of a 2-step procedure to end run the requirements of the Fourth Amendment.

First, the "particularly described" requirement of Fourth Amendment applies as much to items "seized" as it does to items "searched." *See Voss,* 774 F.2d at 404 ("The fourth amendment requires that a search warrant describe the things to be *seized* with sufficient particularity to prevent a 'general, exploratory rummaging in a person's belongings.'" (Emphasis added, quoting *Coolidge,* 403 U.S. at 467)).

Second, even if an unlimited *seizure* of essentially all of Movant's communications were permissible because the initial warrant did not also authorize a *search* of the contents, the Government's ability to subsequently conduct an unlimited *search* of all of those communications (but for whatever a self-selected DOJ taint team determined, without consultation with Movant or his attorneys, was privileged) would still amount to a "general warrant" permitting the government to rummage through Movant's communications without compliance with the "particularly described" requirement of the Fourth Amendment. The July 12, 2022 document that the Government has provided to Movant's counsel only lists a filter protocol to exclude the search of privileged material; it does not otherwise limit the "search" of any of the other information "seized" pursuant to the initial warrant issued by this Court.

---

[2] On July 22, 2022. the Government provided to Movant's counsel a redacted, truncated document dated that same day outlining a filter protocol, but it was unclear from the document whether it was a proposal or a court order, and it was not even clear in which court it had been filed. The Government subsequently stated in its opposition brief filed in this court on August 8, 2022, that the July 12, 2022 document was a "search warrant" "obtained … from the U.S. District Court for the District of Columbia."

The Government appears to be of the view that, having obtained Movant's cell phone and "all information" contained on it, it has no further obligation to provide Movant with a copy of any subsequent warrant to search the contents or a receipt for the information searched and seized, as required by the Federal Rules of Criminal Procedure.  *See* Fed. R. Crim. P. 41(f)(1)(C) ("For a warrant to use remote access to search electronic storage media and seize or copy electronically stored information, the officer must make reasonable efforts to serve a copy of the warrant and receipt on the person whose property was searched or who possessed the information that was seized or copied."); *see also* Fed. R. Crim. P. 41 Notes of Advisory Committee on Rules – 2016 Amendment ("The amendment [Subdivision (f)(1)(C) is intended to ensure that reasonable efforts are made to provide notice of the search, seizure, or copying, as well as a receipt for any information that was seized or copied, to the person whose property was searched or who possessed the information that was seized or copied.").  In other words, there is no ground for Movant to be able to determine whether the Government is indiscriminately "rummaging" through all his electronic communications without limiting any search of the contents to categories of persons, time, or subject matter for which a finding of probable cause might exist, or without concern for First Amendment and basic privacy protections.  All that we know at this point is that there is a taint team to restrict access only to what the Government itself seems to think would be privileged material (a process than itself is inadequate).  The Government's two-step process is not the two-step process acknowledged in the Advisory Committee on Rules notes on the 2009 Amendments to Rule 41, which envisioned a first-step seizure or copying and then a second-step review "to determine what electronically stored information falls within the scope *of the warrant*."  Fed. R. Crim. P. 41 Notes of Advisory Committee on Rules – 2009 Amendment (emphasis added).  Even

if multiple warrants are deployed to manage that two-step process, the subsequent warrants must still be provided to the person whose information has been seized for subsequent search.

Because the door for a broad rummaging through Movant's communications (beyond the government's self-determined privilege review) that was opened by the initial warrant's authorization for the *seizure* of "all information" that was issued by *this* court, it is *this* court that has an obligation to remedy the constitutional violations of which Dr. Eastman is aggrieved. *See* Fed. R. Crim. P. 41(g) ("The motion [to return property] must be filed in the district where the property was seized.").

## IV.    Whether Compulsory Provision of Biometric Data Violates the Fifth Amendment Is an Open Issue in the Courts.

Movant also argues that the search warrant was unconstitutional because it impermissibly authorized agents to compel movant to provide biometric data to open his cellphone.  Resp. at 17. Although this is certainly an emerging legal issue, even the government admits that several courts have arrived at exactly this holding.[3]   *Id.*   The government cites no binding authority to the contrary.

Instead, the government argues that the Fifth Amendment violations are not suppressible where there is no coercion.  *Id.* (*citing United States v. Patane*, 542 U.S. 630 (2004)).  In *Patane*, the Supreme Court held that the physical fruits of un-*Mirandized* voluntary statements are not suppressible.  *Id.* at 633-34.  In *United States v. Oloyede*, also cited by the government, the Tenth Circuit applied the *Patane* holding to a defendant who voluntarily entered her phone passcode at agents' request.  933 F.3d 302, 308-10 (4th Cir. 2019).

---

[3] The government attempts to distinguish movant's cases on the ground that they arose in the suppression context rather than Rule 41.  This is a distinction without a difference because Rule 41(g) applies to "unlawful" searches and seizures.  Obviously, there is little wonder that the vast majority of law on unlawful searches and seizures arises in the suppression context.

The government's cases are obviously distinguishable because here, Movant did not volunteer his biometric information for the agents' use in unlocking his phone.  He was confronted by agents armed with a court order and deadly weapons who demanded he do so.   The governments' inapposite cases therefore do not control and any information from the phone obtained by the government's unlawful conduct is suppressible as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471 (1963); *see also* Fed. R. Crim. P. 41, Notes of Advisory Committee on Rules – 1972 Amendment ("There is no intention to limit the protection of the fifth amendment against compulsory self-incrimination, so items which are solely "testimonial" or "communicative" in nature might well be inadmissible on those grounds," citing *Schmerber v. California,* 384 U.S. 757 (1966)).

## V.      The Identification of Specific Crimes For Which There Has Been A Probable Cause Finding Is Necessary At Least Where, As Here, the Warrant Authorized A Broad Seizure of "All Information."

The Government next contends that Movant cited no case law in support of his claim that a warrant had to specify the specific crimes for which probable cause existed in order to provide the necessary particularity to support the search and seizure at issue here.  Moreover, it believes that its novel two-step approach obviates any need to comply with that requirement, in any event.

Movant cited three cases in support of its assertion that a warrant had to specify particular crimes when no other limitation on the "all information" seizure existed.  ECF 6, p. 14 (quoting *Sterling,* 2006 WL 8444153, at *5 (quoting *Leary*, 846 F.2d at 600, in turn quoting *Voss*, 774 F.2d at 404 ).  We elaborate further here.

In *Sterling,* this Court held as an "essential finding" of fact that "[t]he warrant does not cite any criminal statute."  *United States v. Sterling*, No. CR 03-2566 JB, 2006 WL 8444153, at *3 (D.N.M. May 8, 2006).  In *United States v. Leary*, the Tenth Circuit held that even a warrant's "reference to a broad federal statute is not a sufficient limitation on a search warrant" to meet the

Fourth Amendment's particularity requirement.  846 F.2d at 600 (rejecting warrant's reference to federal export laws as providing the necessary particularity).  *Voss v. Bergsgaard* is to the same effect.  774 F.2d at 405 (rejecting claim that warrant's reference to tax fraud and the general federal conspiracy statute, 18 U.S.C. § 371, provided the requisite particularity).  As the Tenth Circuit subsequently noted, the warrant in *Voss* was invalid because it "was open ended and *the Government failed to pinpoint the statutes violated* or to establish that the alleged crime permeated the business."  *United States v. Lamport*, 787 F.2d 474, 476 (10th Cir. 1986) (emphasis added).  In other words, because even an "unadorned reference to a broad federal statute does not sufficiently limit the scope of a search warrant," *Leary,* 846 F.2d at 602, the lack of reference to *any* federal statute cannot possibly provide the requisite particularity that is lacking in the seizure of "all information" authorized by the warrant at issue here.

What these cases imply is what the Second Circuit has expressly held: "The particularity requirement has three components.  First, *a warrant must identify the specific offense for which the police have established probable cause*.  Second, a warrant must describe the place to be searched.  Third, *the warrant must specify the items to be seized by their relation to designated crimes*."  *United States v. Galpin*, 720 F.3d 436, 445–46 (2d Cir.2013) (emphasis added, citations and internal quotation marks omitted).  When dealing with digital storage, as here, there is a "serious risk that every warrant for electronic information will become, in effect, a general warrant."  *Id.* at 447.  Thus, "warrants that fail to 'link [the evidence sought] to the criminal activity supported by probable cause' do not satisfy the particularity requirement because they 'lack[] meaningful parameters on an otherwise limitless search' of a defendant's electronic media."  *United States v. Ulbricht*, 858 F.3d 71, 99–100 (2d Cir. 2017) (quoting *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010)), *overruled on other grounds*, *Carpenter v. United States,* 138 S.Ct. 2206 (2018); *see*

19

*also Riccardi*, 405 F.3d at 862 ("Our case law therefore suggests that warrants for computer searches must affirmatively limit the search to evidence of specific federal crimes or specific types of material." (Citing *United States v. Walser,* 275 F.3d 981, 986 (10th Cir.2001)*; United States v. Campos,* 221 F.3d 1143, 1147 (10th Cir. 2000))).

## VI.   The Government's Actions Will Cause Irreparable Harm For Which There Is No Adequate Remedy

In his Rule 41 motion, Movant argued that he would suffer irreparable harm from constitutional violations if he is never able to vindicate his rights in a motion to suppress.  ECF 21 at 22.  He also argued that he would suffer irreparable harm from government intrusion of his privileged communications with his attorneys and clients.  *Id*.

The government responds by arguing, based on *In re Search of Kitty's East*, that there is no irreparable injury because this case did not involve prior restraint of speech, as that case did. Resp. at 6; 905 F.2d 1367 (10th Cir. 1990).  However, *Kitty's East* did not announce any bright line rule that prior restraint on protected speech is the only species of constitutional violation that can constitute irreparable harm for Rule 41 purposes.  Similarly, *Floyd v. United States* (also cited by the government) did not establish a bright line rule that Fourth Amendment violations are never irreparable harm.  It simply declined to hold that "*any* deliberate violation of the fourth amendment is constitutionally irreparable."  860 F.2d 999, 1005 (10th Cir. 1988) (italics added).[4] For example, as explained further below, some Fourth Amendment violations can be addressed in other district courts, or in the state courts.  In fact, Tenth Circuit law gives this Court ample room to address Fourth Amendment violations in cases such as the one at bar where multiple

---

[4] The *Floyd* holding was also dicta.  *Id*. at 1005 ("We therefore remand this issue to the trial court for further proceedings regarding the existence of irreparable harm…[w]hile we express no opinion regarding this issue on remand, we offer guidance on the proper characterization of irreparable harm.")

serious violations are alleged, the government has detained the property for an inordinate length of time, has refused to provide even minimal details about what led to the seizure, and where there are good grounds to suspect further constitutional violations may be imminent.  Addressing such situations as irreparable harm is well within Rule 41's reasonableness standard.  *Kitty's East*, 905 F.2d at 1375.  *See also United States v. Sells*, 463 F.3d 1148, 1154 (10th Cir. 2006) ("the problem is not that of intrusion *per se*, but of a general, exploratory rummaging in a person's belongings" (quoting *Coolidge,* 403 U.S. at 467, and also citing 2 W. La Fave, *Search and Seizure,* § 4.6(a) (4th ed.2004).

The government next argues that the harm to Movant can be cured by obtaining a second warrant and establishing taint procedures.  The first contention is unavailing because, per long established law, constitutional violations that lead to other evidence cannot simply be "cured."  *Wong Son v. United States*, 371 U.S. 471 (1963).  As to the second contention, the government's taint procedures are insufficient, as explained below.[5]

Finally, the government argues that Movant can move to suppress evidence from the phone if he is indicted.  Resp. at 5.  But Movant has not been indicted and may never be.  The cases relied on by the government for this argument involve persons under indictment or who have other court remedies.  In *Yosemite*, the Tenth Circuit held that a movant who had been indicted in another court had an adequate remedy, whereas the movant who had not been indicted did not.  *In re Search of 6455 S. Yosemite*, 897 F.2d 1549, 1556 (10th Cir. 1990).  The court held that it had jurisdiction over the latter defendant.  *Id.*  To state the obvious, the Movant here has not been indicted in another jurisdiction, so *Yosemite* actually supports his position.

---

[5] The government includes an extended discussion of the exclusionary rule and its various exceptions. Resp. at 7-9.  This discussion is inapposite because the matter is not before the Court on a motion to exclude evidence from use at trial.

*United States v. Copeman*, also relied on by the government (Resp. at 5), supports Movant's position on irreparable harm as well.  The defendant in *Copeman*'s property had been seized by state authorities, and the court held that he had an adequate remedy in state court.  458 F.3d 1070, 1071-73 (10th Cir. 2006) ("We can also readily affirm that the district court's ruling that Mr. Copeman has an adequate remedy in state court.").  Movant here has no such state court remedy.

## VII.   Movant Has Met the Standards for a Preliminary Injunction

### a.   The Request for Preliminary Injunction is Not Moot

In response to movant's request for a preliminary injunction, the government first argues that the question is moot because the DC district court has allegedly issued process to search the phone and "any challenge…would lie in the District of Columbia."  Resp. at 22.

The government's argument is incorrect for at least two reasons.  Most fundamentally, the government cites no authority for its argument that non-criminal proceedings in another Court divest this Court of jurisdiction.  *Cf. In re Grand Jury Proceedings,* 115 F.3d 1240, 1245 (5th Cir. 1997) (holding that the Federal Rules of Criminal Procedure did not authorize a federal court in Texas, addressing a Texas Grand Jury subpoena, to rule on the legality of a search warrant that had been executed in another State because the court was not in the district in which the property was seized and would not necessarily be the court in which any trial might occur); *U.S. v. Garcia*, 65 F.3d 17, 20-21 (4th Cir. 1995) (holding that the district-of-seizure venue provision of Rule 41 applied to all actions to recover property seized in connection with a criminal investigation, and was to be brought in district in which the property had been seized, even though the court in which the criminal trial was held could have exercised ancillary jurisdiction over such a motion if filed while the trial was pending).

Moreover, as a factual matter, it is unclear exactly what type of process the government has obtained from the U.S. District Court in DC.  The government claims it has some kind of warrant but has not provided this Court or Movant with a copy.  Movant does <u>not</u> accept the government's proffers.[6]  At a minimum, this Court should order the government to provide any process issued by another court to this Court and to Movant so the jurisdictional question can be properly litigated.

### b.  Movant Has Shown a Likelihood of Success

The government next argues that Movant has not shown a likelihood of success on constitutional claims, relying on its Rule 41 arguments.  Resp. at 22.  However, as Movant has shown above, the government's investigation suffers from multiple insuperable constitutional infirmities.

The government also argues that there is no likelihood of success on the privilege claim because another district has issued taint team procedures for search of the phone (*id*.) but government's taint procedures are also deeply flawed.  In his initial motion, Movant relied on the most recent and thorough treatment of this issue – the Fourth Circuit decision in *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 176 (4th Cir. 2019).[7] [8]  As explained in greater detail in Movant's original pleading, *In re Search Warrant* invalidated an FBI search of a law

---

[6] The government has produced to Movant 7 partially redacted pages of a 27-page document setting forth "Government procedures for warrant execution."  Ex. 1.  The government has refused to produce the rest of the document.

[7] The decision has not yet been the subject of a written opinion in this jurisdiction at the circuit or district level.

[8] *In re Search Warrant* is also a cautionary tale of government overreach.  The defense attorney whose law firm was searched in that case was acquitted of charges arising out of his client representation.  *See*, Tim Prudente and Justin Fenton, *Feds criticized after acquittals in Ken Ravenell conspiracy trial; jury convicts on one count of money laundering*, Baltimore Sun (Dec. 28, 2021), at https://www.baltimoresun.com/news/crime/bs-md-ci-cr-ken-ravenell-verdict-20211228-z43giz7f6zaj5dfzziq5jrov2m-story.html.

firm on a variety of grounds including 1) it instituted the Filter Team without adversarial proceedings, *id*. at 178, and 2) the warrant "delegated judicial functions to *non-lawyer* members of the Filter Team", *id*. at 177 (italics in original).

The government here violated both of these holdings.  Ex 1.  First, the filter team procedures touted by the government were not the result of "adversarial proceedings."  Movant was not given notice that the government would apply for a warrant in DC or an opportunity to be heard when it did.  The government has offered no explanation for why it proceeded in this manner in the face of *In re Search Warrant*.  In some cases, the government may have an arguable interest in proceeding *ex parte* to avoid alerting a target he is under investigation.  This is obviously not the case here because the government has revealed the existence of its investigation by sending federal agents to seize Movant's person as he departed from dinner.

The government has also inexplicably delegated the taint function to nonlawyers including not only federal agents but also paralegals and even contractors.[9]  This despite the fact that the taint procedures themselves contemplate rather fine legal distinctions being drawn.  For example, the taint team is tasked with identifying:

> [a]ll material found to be privileged (and for which no waiver or exception applies) by the court in *Eastman v. Thompson*, Case. No. 8:22-CV-99-DOC-DFM (C.D. Cal.), or any other litigation involving material from the Subject Accounts.[10]

Ex. 1.[11]

---

[9] The procedures state that the filter team "may" include AUSA's not from the U.S. Attorney's Office for the District of Columbia or other DOJ attorneys.  However, there is no requirement to include lawyers so this Court must assume that any of the taint functions could potentially be performed by a nonlawyer.

[10] The excerpted taint procedures provided to movant do not define "Subject Accounts."

[11] The exhibit will be filed under seal.

The filter team is also empowered to disclose potentially protected material to the investigation team (without judicial determination) if it decides "any relevant rulings from another court regarding any applicable privileges, waivers, or other legal questions that bear on the potentially protected material."

The taint procedures are silent on how paralegals and contractors are to carry out their legal analysis.  Will they be trained on Lexis, Westlaw, or Pacer or will the contractors simply be doing Google searches along the lines of "cases about work product" or "what are the exceptions to attorney client privilege?"  Moreover, under the taint procedures, disclosure of potentially privileged material need not be based on binding authority (from whatever source obtained).  The contractors and paralegals are authorized to disclose privileged materials based on "any relevant rulings from another court" that they happen to find persuasive.  There is no requirement that the cases come from federal court or even a U.S. court.  The paralegals are seemingly authorized to disclose privileged materials based on, say, a U.K. court decision returned by a Google search the reasoning of which they find particularly compelling.

It would not have been difficult for the government to make efficient use of nonlawyers in designing a legitimate taint team which complied with *In re Search Warrant's* guidance.  For example, the government could have designated paralegals to segregate potentially unprivileged materials for review by an AUSA before disclosing.  The government could also have relied on federal agents who are themselves attorneys (of which there are many).  Inexplicably, the government did not avail itself of such seemingly sensible options and instead assigned final decisional authority over complex legal questions to nonlawyers.  This decision flies in the face of *In re Search Warrant* and of common sense.

25

### c.   There is a Likelihood of Irreparable Harm

As stated in the original motion, deprivation of a constitutional right "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  The same is true for illegal disclosure of privileged materials.  *In re Search Warrant*, 942 F.3d at 175; *see also Matter of 636 South 66th Terrace, Kansas City, Kan.*, 835 F.Supp. 1304 (D. Kan. 1993).  For the reasons stated elsewhere in this pleading, these irreparable injuries remain imminent, the government's protestations to the contrary notwithstanding.

### d.   The Government Has Offered No Equities to Balance

While the government acknowledges this Court must consider the balance of the equities (Resp. at 22), it offers no equities on the government side for this Court to balance.  For example, the government might have been expected to offer at least some proffer about the importance of its investigation in general and the seized phone in particular.  Such a proffer could seemingly have been accomplished without compromising investigation integrity, and the government has offered no reason why it could not have been.  The absence of any attempt by the government to convince this Court that the equities are in its favor throws this factor decisively to movant.

### e.   Public Interest

Finally, as to public interest, the government argues that "movant has shown neither a breach of attorney-client privilege nor an unconstitutional search."  Resp at 23.  As argued, elsewhere in this pleading, these conclusions are not true.  Indeed, the government's response only offers more reasons why the public interest cries out for action by this Court.  In the context of a highly politicized investigation into a potential 2024 Presidential nominee (perhaps even the front runner), the government has seized the cellphone of a private citizen viewed as aligned with that potential nominee while refusing to inform him of what laws he is suspected of violating, when he will get his phone back, or whether he need fear imminent arrest.  In support of this

action, the government has argued to this Court that the DOJ Inspector General's office has authority to investigate any American it subjectively concludes has "adversely affected" DOJ operations without disclosing the reasoning for this conclusion.  Finally, the government is currently attempting to divest this Court of jurisdiction in the face of Rule 41's clear language by simply asserting it has obtained legal process from another court, without condescending to produce it in this Court.  This case presents important questions, and the public interest manifestly favors action by this court.

## VIII.   Movant's Property Should Be Returned Because The Government Has No Ongoing Need to Retain It.

Even if the Court were to hold that the initial seizure of Movant's phone and "all information" contained therein was lawful, a return of Movant's property is still warranted where, as here, any legitimate interest of the Government could be satisfied even if the property is returned.   In such a case, "continued retention of the property would become unreasonable." *Davis*, 111 F.3d at 1477 (quoting Fed. R. Crim. P. 41, Notes of Advisory Committee on Rules – 1989 Amendment, and citing *In re Search of Kitty's East,* 905 F.2d at 1375).

The Government has not alleged that the phone itself is an instrumentality of a crime.[12]  *Cf. United States v. Cano*, 222 F.Supp.3d 876 (S.D. Cal. 2016) (rejecting Rule 41 motion for return of property where "phone was seized as an alleged instrumentality of the charged drug crime"), *reversed on other grounds*, 934 F.3d 1002 (9th Cir. 2019).  It has not contended that the phone is subject to forfeiture.  *See United States v. Premises Known as 608 Taylor Ave.*, 584 F.2d 1297, 1303 (3d Cir.1978) (recognizing that the government's retention of property would be reasonable

---

[12] Indeed, Movant had not even purchased the seized phone until months after the time period presumably at issue here.

27

so long as it had a continuing interest in it, such as a forfeiture).  It has not offered any explanation as to why any ongoing evidentiary interest the Government might have in the information seized from Movant's phone could not be satisfied by retaining electronic copies or a forensic image of Movant's phone.  *See* Fed. R. Crim. P. 41, Notes of Advisory Committee on Rules – 1989 Amendment ("In many instances documents and records that are relevant to ongoing or contemplated criminal investigations and prosecutions may be returned to their owner as long as the government preserves a copy for future use.").

The "burden of proof is on the government to show that it has a legitimate reason to retain the property." *U.S. v. Mills*, 991 F.2d 609, 612 (9th Cir. 1993); *see also United States v. Yung*, 103 F.3d 145 (10th Cir. 1996) ("where the property in question is no longer needed for evidentiary purposes, we agree with the Ninth Circuit that "[t]he person from whom the property is seized is presumed to have a right to its return, and the government has the burden of demonstrating that it has a legitimate reason to retain the property.").[13]  The Government's failure on this score therefore requires the return of the property *now*, even if it had been lawfully seized in the first place.

## CONCLUSION

For the reasons stated above and previously, Movant respectfully requests that this Court order OIG to return Movant's property—both the cell phone and "all information" in it, as well as to destroy all copies of any information that has already been retrieved or copied from the device. Movant further requests in the alternative that, if the initial seizure is deemed to be valid, his

---

[13] The Tenth Circuit has imposed the burden on the Government to "demonstrate that it has a legitimate reason to retain the property" in situations where "criminal proceedings are terminated." *United States v. Shigemura*, 664 F.3d 310, 312 (10th Cir. 2011) (quoting *United States v. Clymore*, 245 F.3d 1195, 1201 (10th Cir. 2001)).  It does not appear to have addressed the precise situation here, where the Government has not (and may not) institute criminal proceedings but where, as the Advisory Notes to Rule 41 indicate, any legitimate interest of the Government could be satisfied by other means (such as forensic imaging or copying) without retaining the seized property.

property nevertheless be returned because the government has not demonstrated a continuing need to retain it.

Respectfully Submitted,

/s/ Charles Burnham_____
Charles Burnham
Burnham & Gorokhov, PLLC
1424 K Street NW, Suite 500
Washington, DC 20005
(202) 386-6920 (phone)
(202) 765-2173 (fax)
charles@burnhamgorokhov.com

/s/ Joseph J. Gribble_____
Joseph J. Gribble
Crowley & Gribble, P.C.
300 Central Ave SW, Suite 3500
Albuquerque, NM 87102
(505) 314-1450
(505) 314-1452 (fax)
jjg@crowleygribble.com

*Attorneys for Plaintiff*